JOSEPH R. DUNLOP

*v.*

BENJAMIN B. LAMB.

*Opinion filed October 16, 1899—Rehearing denied December 8, 1899.*

1. WITNESSES—*section 2 of Evidence act applied.* Defendant to a suit brought by an heir of his deceased wife to compel compliance with an ante-nuptial contract is incompetent, under section 2 of the Evidence act, to testify in support of the allegations of his cross-bill concerning acts and declarations of the wife relied upon as showing the contract was inoperative.

2. EVIDENCE—*possession of written instrument is prima facie evidence of delivery.* Possession of a written agreement by a party thereto after its execution by the other party raises a presumption of delivery, which can only be overcome by clear and satisfactory proof.

3. CONTRACTS—*ante-nuptial contract must be clear to deprive parties of marital rights.* The marital rights of a husband or wife in the estate of the other will not be taken away by an ante-nuptial contract unless the intention to do so is clearly apparent from the contract, the terms of which should be construed not only with reference to its general scope and purpose, but to the circumstances surrounding the parties at the time it was made.

4. SAME—*ante-nuptial contract construed as barring husband's rights in wife's property.* A provision in an ante-nuptial agreement that the husband will not claim any right in the wife's property, and will, upon request, execute any deed which may be deemed necessary to more effectually bar or extinguish any right of dower, homestead or inheritance in the estate of the wife, is not ambiguous, but clearly manifests an intention to relinquish all claim to the wife's estate, even though not conveyed by her before death.

5. SAME—*extent to which recital in agreement may be resorted to in its construction.* A recital in an agreement may be resorted to where the words in the operative part of the agreement are of doubtful purport, but cannot control their clear intent and meaning.

6. PARTIES—*when complainant in bill to enforce ante-nuptial contract is not a mere volunteer.* A collateral heir of a deceased wife is not a volunteer, outside of the influence of the consideration of marriage, upon which a marriage settlement was based, but may ask enforcement of the ante-nuptial agreement in a court of equity, where the husband contracted for himself and his heirs with the wife and her heirs and relinquished all claim to her estate.

APPEAL from the Circuit Court of Cook county; the Hon. EDMUND W. BURKE, Judge, presiding.

WILLIAM P. BLACK, GOODRICH, VINCENT & BRADLEY, and N. H. HANCHETTE, for appellant.

BENTLEY & BURLING, and CHARLES C. WALKER, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Appellee filed his bill in chancery in the circuit court of Cook county, as the nephew and sole surviving heir of Mrs. Eureka C. Story Dunlop, deceased, against appel-. lant, to compel him to execute a deed of release of dower and to real and personal estate of deceased, and also to enjoin him from in any manner asserting any rights, as husband, widower, heir-at-law or next of kin, in her estate. The bill was based upon the following agreement:

"This agreement, made this fourth day of August, A. D. 1890, between Joseph R. Dunlop and Eureka C. Story, both of the city of Chicago and State of Illinois:

"*Witnesseth:* That, whereas, a marriage is intended shortly to be solemnized between the said parties, in view of which they desire to provide that the entire estate, real, personal and mixed, including all property of every kind, nature and description now belonging to or which may hereafter be acquired by the said Eureka C. Story, shall be possessed, enjoyed and disposed of by her the same as if she were sole and unmarried and without the help or hindrance of the said Joseph R. Dunlop, her husband:

"Now, therefore, in consideration of said intended marriage and for the purpose aforesaid, the said Eureka C. Story shall continue to possess and enjoy said entire estate, with power to control, manage and dispose of the same, absolutely or conditionally, by deed, will or otherwise, notwithstanding her coverture, without help or hindrance of the said Joseph R. Dunlop, the same as if she were sole and unmarried. And the said Joseph R. Dunlop, for the consideration aforesaid, hereby covenants and agrees with the said Eureka C. Story that he will in no manner disturb the said Eureka C. Story in the possession, enjoyment, disposition, control and power herein provided for. And the said Joseph R. Dunlop, for himself, his heirs, executors, administrators, devisees and assigns, covenants and agrees with the said Eureka C. Story, her heirs, executors, administrators

and assigns, that he will not, at any time, claim any right in any of the aforesaid property as husband, widower, heir or next of kin; and he further agrees to execute, upon request, any deed which may by counsel be deemed necessary more effectually to bar or extinguish any right of dower or homestead or of inheritance in the estate of the said Eureka C. Story. It is mutually agreed that this contract shall be null and void unless the contemplated marriage relations shall be consummated.

"In witness whereof the parties hereto have hereunto signed their names and affixed their seals the day and year above written.    JOSEPH R. DUNLOP,
EUREKA C. STORY."

The defendant, admitting the execution of the agreement but denying that it ever became operative between the parties, filed a cross-bill, alleging that it was not to take effect until Mrs. Dunlop had executed a like release of her interest in his estate, and praying for an accounting by the complainant, Lamb, as to her estate, and for an injunction restraining him from disposing of the personalty, and for partition of the real estate. The answer also averred that there never was any agreement or intention between the parties that the paper relied upon by complainant should be operative to bar the rights of the defendant, Dunlop, unless in the event of some affirmative action taken by the wife in the matter of the disposition of her estate, real and personal, and that no such action was taken by her at any time, and hence the defendant's marital rights were wholly unaffected by the contract. It admitted the heirship of complainant, as alleged in the bill, and that after the death of Mrs. Dunlop a quit-claim deed to her real estate and a covenant barring the defendant from claiming any right in her estate, deemed necessary by complainant's counsel, was presented to the defendant for his execution, and that he refused to execute the same.

The cause was heard on bill, cross-bill, answers and replication and proofs, and a decree rendered granting the prayer of the original bill and dismissing the cross-bill. Appellant prosecutes this appeal.

Three principal propositions are relied upon to reverse the decree below: First, that the contract set up in the original bill and relied upon for the relief therein prayed was never delivered to Mrs. Story, and that it never was intended by the parties to become binding upon appellant for want of the execution of a similar contract in his favor, as alleged in the cross-bill; second, that by a proper construction of the contract appellant did not release his interest in the wife's estate which might remain intestate upon her death, but only that she might continue to possess, enjoy, control, manage and dispose of her property during the marriage relation as if she were unmarried, free from any interference or assistance on his part; third, that even though the contract was effective between the parties and amounted to a relinquishment of all his right in her estate during or after the termination of the marriage relation, still appellee is to be treated as a mere volunteer, and not entitled in a court of equity to the relief prayed.

On the first proposition the only contention in the argument is, that the evidence introduced on the part of appellee failed to prove a delivery of the alleged agreement to Mrs. Dunlop during her lifetime. All questions raised by the cross-bill are virtually conceded to be out of the case for want of competent proof to establish its allegations. Dunlop, the defendant in the original bill and complainant in the cross-bill, was the only witness by whom it was sought to prove these allegations, and he being a party to the suit and interested in the result thereof, and appellee suing as the heir of Mrs. Dunlop, deceased, by the express provisions of section 2 of chapter 51, entitled "Evidence," (Starr & Cur. Stat.—1st ed.— p. 1072,) he was incompetent to testify to any acts or declarations occurring or made prior to the death of the deceased. There is therefore no question but that the circuit court properly dismissed the cross-bill.

On the question of delivery raised by the answer, it is to be remarked that the contract was not such a one as that a formal delivery was necessary in order to give it validity, as in the case of deeds to real estate, etc. Of course, if it was not delivered because the parties did not intend that it should take effect from its execution, it would not be binding upon them or either of them; and perhaps that is what is meant by counsel in their insistence that it was invalid for want of delivery. We think, however, that, in any view of the question of delivery, the evidence introduced by appellee upon that subject sufficiently established the fact. He was in possession of the contract upon the hearing and introduced it in evidence. He proved that he took it from a safety box of Mrs. Dunlop after her death. This testimony is discredited by counsel for defendant, for the reason that it is contradicted by the officers or employees of the bank where the safety box was kept, and largely because appellee did not himself testify as to his getting it from that box, but relied solely upon the testimony of a witness who swore that he went to the bank with appellee and saw him take the contract from the vault. There is an irreconcilable conflict in the evidence of this witness and those in charge of the safety vault as to the hour of the day when the box was opened and its contents taken away; but as to the fact that appellee was at the bank with another person (presumably the witness) the day after Mrs. Dunlop's death, and caused the safety box to be broken open, removing the contents, including this contract, there is no contradiction. And while it may be said that appellee acted with undue haste in the matter of procuring the opening of the box and in taking possession of the effects of his aunt after her death, we are unable to see how it can be said, in the absence of all proof to the contrary, that he did not find the instrument in the manner claimed. That he had possession of it is not denied. How he obtained that possession, if not in

the manner claimed by him, is wholly unexplained. In fact, it is shown with reasonable certainty that he did not get it from Judge Trumbull, who prepared it and in whose presence it was executed, and with whom appellant says it was left at the time. The only affirmative proof offered on the question of delivery shows that it was in the possession of Mrs. Dunlop at the time of her death, and under all the authorities that possession raised a presumption of delivery, which could only have been overcome by clear and satisfactory proof. (*Reed* v. *Douthit*, 62 Ill. 348; *Tunison* v. *Chamblin*, 88 id. 378; *Griffin* v. *Griffin*, 125 id. 430.) In fact, this ground of reversal is not seriously insisted upon.

We think it clear that the merits of the case turn upon the question whether, by the terms of the contract, appellant relinquished his rights, as husband of the deceased, in her intestate estate. That the marital rights of a husband or wife in the estate of the other will not be taken away by an ante-nuptial contract unless the intention to do so is clearly apparent from the contract, as contended by counsel for appellant, may be conceded. It is not a matter of controversy that in the construction of such contracts the general rule is, that the intention of the parties as ascertained from the whole instrument must govern. That rule is well stated in the quotation made by counsel for appellant from Jones on the Construction of Contracts, (secs. 218, 221,) as follows:

"Sec. 218. While courts strive to give effect to every clause of a contract, they do this upon the assumption that the parties have used all the language of the contract intelligibly and for specified reasons. When, therefore, a consideration of the whole contract discloses the fact that words have been used carelessly or unknowingly, and when the writing, viewed in the light of circumstances; shows that one clear intent was in the minds of the contracting parties and that the difficulty is only with the expression of this intent, the reason for giving

a precise meaning to each clause altogether fails. It has been said that an agreement always 'ought to receive that construction which will best effectuate the intention of the parties to be collected from the whole of the agreement, and that greater regard is to be had to the clear intention of the parties than to any particular words which they may have used in the expression of their intent;' and we have seen that the whole aim of construction is the discovery of the thought of the contract. If, then, upon a consideration of the whole agreement, it is reasonable to conclude that the intent of the parties is clearly ascertained, the law interprets the contract pursuant to such intents.

"Sec. 221. * * * Thus, to carry out the intention, words may be transposed, rejected or supplied if necessary, and every part of the contract will be made to yield to the one general intent which is expressed therein."

Beach, in his work on the Modern Law of Contracts, (sec. 1299,) speaking of marriage settlements, says: "Reason and authority both favor a liberal construction of these contracts. Their purpose is to prevent strife, secure peace, adjust rights and settle the question of marital rights in property. From the earliest years of the law the courts in chancery, rejecting the iron rules of the common law, have favored such contracts, and this rule of equity has been engrafted in the body of American jurisprudence. The cardinal rule by which all such contracts are measured and construed is the intention with which the parties contracted, and in seeking this, the courts look not only to the letter of the instrument, but also to its general scope and purpose, and to the conditions, situation and surrounding circumstances attending the parties at the time the agreement is made." It was also held in *Tabb* v. *Archer*, 3 H. & M. 398 (3 Am. Dec. 657): "The intention of the parties in marriage articles should be collected from the nature of the agreement, the language and context, the usage in such cases, and the legal

rights of the parties as they existed before and would have existed after the marriage if no agreement had been made."

The facts bearing upon the construction of the agreement in question are as follows: Mrs. Story was the widow of the late Wilbur F. Story, possessed in her own right of personal property variously estimated at from $120,000 to $350,000, and a comparatively small amount of real estate, of the value of perhaps $15,000. She had never been the mother of children, and was, at the time of the making of this contract, at a period in life when there was no longer a hope or expectation of bearing children. Dunlop was a man of some forty years of age, and, as is claimed by him, possessed of a large fortune. As before stated, the contract was drafted by the late Judge Lyman Trumbull,—as the evidence shows, at the request of both parties, the services being paid for by Mrs. Story. A casual reading of the contract will show that two purposes were in the minds of the parties when it was entered into: First, (by the recital and two immediate stipulations,) that the wife should have the possession, enjoyment and power of disposition of her entire estate during the marital relation, free from interference on the part of the husband; and second, (by the third clause,) that the husband would not, at any time, claim any right in any of her estate as husband, widower or next of kin to her, and that he would, upon request, execute any deed deemed necessary more effectually "*to bar or extinguish* any right of dower or of homestead or of inheritance in *the estate of the said Eureka C. Story.*"

While it is earnestly contended that there is some ambiguity or uncertainty in this last clause, as manifesting an intention on the part of the husband to relinquish all claim to any part of her estate not disposed of during her lifetime, we think its language to that effect is too clear to admit of doubt. In reaching this conclusion we do not attach particular importance to the use of the

words "her heirs, executors, administrators and assigns," except as indicating his intention to dispose of his interest in property which she might own at her death. No ambiguity arises from the use of those words from the fact that in the absence of the agreement the husband would be one of her heirs, because, as we view the contract, one of its objects was to forestall and cut off his rights as such heir. As was said in *Charles* v. *Charles*, 8 Gratt. 486 (56 Am. Dec. 155): "The rights of the husband to the property of his intended wife may be anticipated by his agreement to that effect, and where by express contract, for which the marriage is a sufficient consideration, he agrees to surrender his right to the enjoyment of the property during the coverture and his right to take as survivor, there remains nothing to which his marital rights can attach during the coverture or after the death of the wife. In such case the wife is, to all intents, to be regarded as a *feme sole* in respect to such property, and there would seem to be no necessity for any limitation over to her next of kin in the event of a failure to appoint during her lifetime. The husband having by contract, for a good consideration, released his right as survivor, the property must pass as though she had died sole and intestate." Certainly, Mr. Dunlop's agreement to claim no right in any of her property, as widower, heir or next of kin, and, if necessary to give effect to that agreement, to execute a release so as to bar or extinguish any right of dower or of homestead or of inheritance in her estate, could mean nothing else than an anticipation and relinquishment of all right which he otherwise would acquire in her estate by the contemplated marriage. Under appellant's contention this third clause adds nothing to the force of the agreement; and it is scarcely conceivable that a lawyer of the eminent ability of Judge Trumbull should have added it to the preceding clauses, if, as is contended, the only object of the parties was to leave the wife in the possession and

control of her property with the power of disposition while she lived. Neither can it be supposed that in view of her rights, under our statute, as to her separate property, a contract would have been drawn for the mere purpose of giving her the rights here insisted upon. Certainly, as to all the personal estate these rights were as amply secured and protected by the statute without such an agreement as with it; and as to the real estate, the contract as construed would serve no other purpose than to obligate him to release his inchoate right of dower and homestead in case she desired to convey or dispose of it by deed or will.

If we take the several clauses of the contract, without reference to the introductory part of it, under the most favorable view to appellant it must, we think, be conceded that two intentions are manifested: First, to give her the absolute control and right of disposition of her property during her lifetime, without help or hindrance of the husband; and second, to relinquish on his part all claim of right to her entire estate. These intentions are in no way conflicting but perfectly consistent with each other. Can it be fairly said that the language in the recital, "in view of which they desire to prove that the entire estate, real, personal and mixed, including all property of every kind, nature and description, now belonging to or which may hereafter be acquired by the said Eureka C. Story, shall be possessed, enjoyed and disposed. of by her the same as if she were sole and unmarried, and without the help or hindrance of the said Joseph R. Dunlop, her husband," should be given the effect of limiting the entire agreement, including the third clause, to the mere right of the wife in her property while she lived? This recital is not a necessary part of the agreement, nor does it assume to state the whole and only purpose of the contract. Of course, it is properly to be considered in connection with the obligatory parts, but cannot be held to control the clear intent and meaning of the third

clause. We said in *Burgess* v. *Badger*, 124 Ill. 288 (p. 293):
"It is the rule, as contended by counsel for plaintiff in
error, that where the words in the operative part of an
instrument are of doubtful meaning, the recitals preced-
ing the doubtful part may be used as a test to discover
the intention of the parties and fix the meaning of the
words. (*Walker* v. *Tucker*, 70 Ill. 527.) But this does not
mean that we shall look at the language of the recitals,
alone. It simply means that we shall look at the entire
language,—that included in the recitals as well as that
included in the operative part of the instrument,—and
from the whole ascertain the intention of the parties."
Many other authorities to the same effect might be cited,
but it is unnecessary to do so, counsel for appellant, as
we understand, conceding the rule, basing their conten-
tion here upon the assumption that the third clause is
of uncertain or doubtful import,—an assumption, as we
have seen, not warranted. We do not deem it important
to pursue at length the argument of counsel on either
side upon this branch of the case. In our opinion the
construction here announced clearly appears from a con-
sideration of the whole contract, and can be escaped only
by a strained interpretation of the language used.

*Stewart* v. *Stewart*, 7 Johns. 228, which counsel for ap-
pellant rely upon as controlling this case, is not in point.
The construction placed upon the contract there before
the court was, that it did no more than to give the wife
the power of appointment over her property during her
lifetime, there being no provision relinquishing the hus-
band's right to the same after her death. In other words,
the effect of that contract was held to be that which is
insisted upon as the proper construction of this contract,
and, of course, under that construction it was properly
held that at the wife's death the covenant had fulfilled
its object and its provisions were exhausted.

The contract having been executed and delivered,
so as to become operative between the parties, and its

proper construction being that it relinquished on the part of the husband all his rights, as such, in the estate of his wife, it only remains to be considered whether appellee had the right, in a court of equity, to the relief prayed. On this branch of the case it is contended on behalf of appellant, that, the only consideration for the agreement being the contemplated marriage, he is a mere volunteer, and not within that consideration. There is a distinction in the law between marriage settlements which have been actually executed and mere marriage articles only for a settlement, and as to the latter it has been said: "The parties seeking a specific execution of such articles may be those who are strictly within the reach and influence of the consideration of the marriage or claiming through them, such as the wife and issue, and claiming under them; or they may be mere volunteers, for whom the settlor is under no natural or moral obligation to provide, and yet who are included within the scope of the provisions in the marriage articles, such as his distant heirs or relatives, or mere strangers." (Story's Eq. Jur.—11th ed.—sec. 986.) And the author proceeds: "Now the distinction is, that marriage articles will be specifically excepted upon the application of any person within the scope of the consideration of the marriage or claiming under such person, but not generally upon the application of mere volunteers."

On the assumption that this contract amounts merely to articles of marriage, and under the rule announced, it is insisted that complainant below cannot ask a court of equity to decree a specific performance of the same. Practically the contract is a marriage settlement actually executed between the parties, the language upon which this bill is based being the agreement on the part of the husband to execute, upon request, any deed which may by counsel be deemed necessary "*more effectually to bar or extinguish* any right of dower or of homestead or inheritance in the estate of the said Eureka C. Story."

Even without this provision, under our construction of the contract the defendant, Dunlop, is entitled to receive no part of his wife's estate. The relief here sought is only to more effectually carry out the executed marriage contract. Moreover, the rule as stated by Judge Story, that marriage articles will not generally be specifically executed upon the application of a mere volunteer, does not apply to the facts of this case. In Schouler on Domestic Relations (2d ed. 264) the author says: "In *Nevis v. Scott*, which came up on appeal before the Supreme Court of the United States, the rights of collaterals under a marriage agreement received consideration, and it is declared as the result of the authorities, English and American, that if, from the circumstances under which the marriage articles were entered into by the parties or as collected from the face of the instrument itself, it appears to have been intended that the collateral relatives in a given event should take the estate, and a proper limitation to that effect is contained in them, a court of equity will enforce the trust for their benefit. They will not be regarded as volunteers outside of the deed, but as coming fairly within the influence of the consideration on which it is founded, the consideration extending, in fact, through all the limitations for the benefit of the remotest persons provided for, consistent with law." The *Nevis case* fully sustains what is here said as to the scope of its decision.

In view of the facts before stated concerning the parties at the time of the execution of their marriage contract, manifestly neither of them contemplated the birth of issue as a result of the marriage. They covenant in the third clause, he for himself and his heirs with her and her heirs,—clearly indicating that they then understood that at the death of the wife her heirs would not be his; and as we have said, he having relinquished all his right and claim to her estate, they must have contemplated her collateral heirs. Therefore, the appellee

comes fairly within the influence of the consideration on which the contract is founded.

We find no reversible error in this record, and the decree of the circuit court will be affirmed.

*Decree affirmed.*