(No. 12341.—Decree affirmed.)

ALBERT DEAN *vs.* CHARLES DEAN *et al.*—(ALBERT DEAN *et al.* Appellants, *vs.* MARIE C. MASON, Admx., Appellee.)

*Opinion filed December 18, 1918.*

1. PARTITION—*complainant must prove ante-nuptial contract as alleged in bill.* A complainant who seeks to partition land between himself and his brother as heirs of their deceased uncle, and who alleges in the bill that the widow of the deceased is barred from any interest in the land by reason of an alleged ante-nuptial contract set out in the bill, must establish, by clear and convincing proof, the existence of such contract in substance as set out.

2. SAME—*what offered proof is properly denied admission as self-serving.* A complainant in a bill for partition who claims that the rights of the widow of the deceased are barred by an alleged ante-nuptial contract cannot be allowed to prove alleged statements by the deceased to witnesses to the effect that he had made such a contract.

3. SAME—*when parties cannot testify to alleged conversation with deceased.* In a proceeding by a nephew to partition land of his deceased uncle between himself and his brother, who, with the widow of the deceased, individually and as administratrix of the estate, was made a party defendant, the complainant and his brother are incompetent to testify to a conversation between them and the deceased and his wife in which was discussed the alleged ante-nuptial contract, which the bill sets out as barring the widow's rights in the land.

APPEAL from the Circuit Court of Morgan county; the Hon. NORMAN L. JONES, Judge, presiding.

JAMES O. PRIEST, (EDWARD C. KNOTTS, of counsel,) for appellants.

Owen P. Thompson, P. P. Thompson, and John M. Butler, for appellee.

Mr. Justice Cooke delivered the opinion of the court:

This is an appeal from a decree of partition entered in the circuit court of Morgan county. Albert Dean, one of the appellants, filed his bill against Charles Dean and Marie C. Mason, individually and as administratrix of the estate of William H. Mason, praying for the partition of various lands owned by Mason at the time of his death. The bill alleged that Mason died intestate, leaving him surviving no child or children but leaving Albert Dean and Charles Dean, the appellants, his nephews, as his only heirs-at-law, and that they had inherited all the real estate described in the bill, in equal parts. It was further alleged that Marie C. Mason, the widow of William H. Mason, claimed some interest in the lands but denied that she had any interest therein. Thereafter Marie C. Mason, both individually and as administratrix, answered the bill and filed a cross-bill, in which she alleged that the lands had descended to her individually and to appellants as tenants in common; that she was entitled to a homestead and one-half of the real estate as heir-at-law and to dower in the other half, and that appellants were entitled to the remaining one-half subject to her dower.

On the first day of the term of court to which the bill was filed, Albert Dean, after having obtained leave of court therefor, filed his amended bill, in which he again alleged the ownership of the lands described as in the original bill, and that the same descended to him and his brother Charles by reason of an ante-nuptial contract which he alleged had been entered into by William H. Mason and Marie C. Mason, (then Marie C. Grady,) prior to their marriage. The amended bill sets out the alleged contract *in hæc verba.* The essential part of the contract set forth that Marie C.

Mason should receive no part of the estate of William H. Mason after his death, should she survive him, except the income from $50,000, and that all the remainder of his estate at his death was to descend to appellants, and that at the death of Marie C. Mason appellants were also to receive said sum of $50,000. The alleged contract concluded thus: "In witness whereof we have hereunto set our hands and seals in duplicate, the day and date first above written." The contract, as set forth in the amended bill, was dated January 5, 1899, and there was attached to it a certificate of acknowledgment pretended to be made by D. J. Sullivan, notary public, dated the same day. Upon motion of appellee the court entered a rule upon appellant Charles Dean to file with the clerk of the court the alleged ante-nuptial contract for inspection. In response to the rule he filed his sworn answer, in which he stated that he did not have the contract in his possession or under his control, but that he believed that appellee was then in the possession of the contract and that the court should enter an order directing and compelling her to impound the same with the clerk. Appellee thereupon filed her sworn answer to the rule, in which she stated that she had never made and executed an ante-nuptial contract with William H. Mason and never at any time had possession of any such contract, and that no such contract was ever in existence, before her marriage or afterwards.

Upon motion of Albert Dean the court ordered the following issue out of chancery to be tried by a jury: "Was there in existence at the time of the death of William H. Mason an ante-nuptial contract in writing between him and Marie C. Mason, his wife, an alleged copy of which is set out in complainant's amended bill of complaint?" This issue was tried before a jury and a verdict was returned that there was not such an ante-nuptial contract in existence at the time of the death of Mason. A decree was entered finding that at the time of the death of Mason there was

no such ante-nuptial contract in existence and awarding partition according to the prayer of appellee's cross-bill.

The only question presented on this appeal is the correctness of the decree in respect to the existence of the ante-nuptial contract. Appellants rely almost wholly upon the testimony of George Whitehead, who formerly was a near neighbor of William H. Mason but who at the time of the trial was living in Oklahoma. This witness claimed to have seen and read the alleged contract and to have signed his name thereto as a witness at the request of Mason. He testified that he was summoned to Mason's residence in September or October, 1898, and that when he arrived there he found Mason, Marie C. Grady, Mason's housekeeper and the housekeeper's son; that Mason stated he had a contract that he wished him to sign as a witness, and upon Whitehead stating that he was not in the habit of signing anything unless he knew the contents of the paper, he was permitted to read it; that it was a contract between Mason and Marie C. Grady, whereby all of Mason's lands and other property were to go to appellants, excepting the sum of $50,000, which Marie C. Grady was to have during her lifetime and which after her death was to become the property of appellants; that he did not recollect anything that was contained in the contract with reference to the marriage, and did not remember whether the contract recited that they were engaged to be married; that the contract was in longhand, but he did not know in whose handwriting it was. He testified that there was only one copy of the instrument and that he signed but one instrument as a witness. Thereupon the complainant amended his bill by striking out the words "in duplicate" from the clause of the alleged contract above quoted. The only other testimony tending to prove that such a contract had ever existed was that of appellants, each of whom testified that about a week after the death of Mason they went to the home of appellee and told her they had come down to see what their rights

were under the contract; that she replied that the contract was up-stairs but that they could not see it. Appellee and her sister, who was present on this occasion, both denied this conversation, and stated that the only matter discussed was whether or not Mason had left a will. Both testified that the subject of a contract was not mentioned.

Appellants made at least two trips prior to the trial to East St. Louis to interview D. J. Sullivan, who was then engaged in the practice of law there and who had formerly practiced his profession at Roodhouse, during which time he had attended to Mason's business affairs. Sullivan appeared as a witness at the trial. During the progress of the trial the complainant further amended his bill by striking out the certificate of acknowledgment to the alleged contract as set out in the bill. Sullivan testified that he had never at any time prepared an ante-nuptial contract for Mason and Marie C. Grady, but that he had transacted other business for Mason; that he left Roodhouse about the year 1900, and that two or three years before that time he had driven out to Mason's house and drawn up a contract between Mason and his housekeeper, Mrs. Clatt; that Fred Clatt, the son of the housekeeper, came to Roodhouse for him, and that he could not remember the nature of the agreement which he drew up on that occasion. Fred Clatt testified for appellants that he was the person whom Mason sent for Whitehead, and he remembered bringing Whitehead to Mason's home in the fall of 1898; that his mother, Mason and Miss Grady were there; that he did not remember what Mason wanted with Whitehead; that all he heard of the conversation was Mason's statement that he intended to be married; that he saw a paper there on the table and heard Mason and Whitehead talking about it. T. McCarty, a resident of that vicinity, testified that he knew Clatt and had a conversation with him in Roodhouse in reference to this paper, and that Clatt stated to him: "Mr. Sullivan said those papers were concerning my mother; Mr. Mason sent

me over for George Whitehead, and he came over and signed them," and that Clatt further stated that Miss Grady was not present at the time. Another witness testified that he overheard Clatt state to one of the attorneys for appellee that Miss Grady was not present on the occasion when he brought Whitehead to the Mason home. Clatt denied these conversations. This is, in substance, all the testimony offered to establish the existence of the ante-nuptial contract.

Appellants complain that the court erred in not permitting them to prove by various witnesses that Mason had stated that he had made such an ante-nuptial contract with his wife. This evidence was properly excluded, as the statements attempted to be proven were self-serving. They also complain that they were not permitted to testify to a conversation had between them, Mason and appellee prior to Mason's death in which the matter of the ante-nuptial contract was discussed. Appellants were incompetent to testify to any facts or circumstances occurring during the lifetime of Mason.

Some of the papers belonging to Mason at the time of his death were in the custody of his banker and some were kept in his home. Appellee testified that she never saw or destroyed any such paper as the alleged contract after her husband's death. The issue was tried before a jury, who saw and heard the witnesses testify, and the verdict of the jury was approved by the chancellor. It was incumbent upon the appellants to show by clear and convincing proof the existence of an ante-nuptial contract in substance as set out in the bill. The evidence fell short of establishing the existence of the contract with the certainty required, and the verdict of the jury and the decree of the chancellor were proper.

The decree of the circuit court is affirmed.

*Decree affirmed.*