(No. 21243.—

THOMAS J. MORRIS, Appellant, *vs.* MARY MASTERS *et al.*
Appellees.

*Opinion filed June 24, 1932—Rehearing denied October 5, 1932.*

NEWBY, McDONALD & BURDITT, JOHN T. MURRAY, and P. F. MURRAY, (CHARLES A. McDONALD, of counsel,) for appellant.

MARKHEIM & ALLIE, and FOREMAN, BLUFORD, KRINSLEY & SCHULTZ, (HARRY MARKHEIM, MILTON MALLIN, LAZARUS KRINSLEY, and OWEN RALL, of counsel,) for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellant, Thomas J. Morris, filed a bill in the superior court of Cook county against Mary Masters and Margaret McLachlan, heirs-at-law of Lillian King Morris, deceased, to set aside an ante-nuptial agreement and for a partition of certain real estate. A general demurrer was sustained to the bill, appellant elected to stand by the bill, a decree was entered dismissing the bill for want of equity, and an appeal was prosecuted to this court.

The bill alleged that Lillian King Morris died intestate June 17, 1929, leaving as her only heirs-at-law Thomas J. Morris, her husband, and Margaret McLachlan and Mary Masters, her sisters; that the gross value of her estate was $300,000, consisting of $160,000 in personal property and $140,000 in real estate; that William M. Dewey was acting as administrator; that on May 7, 1930, Mary Masters died intestate, leaving as her only heirs-at-law her daughters, Virginia M. Fritz, Lillian M. Schmolze and Marion Masters, who were made parties defendant by a supplemental bill; that on January 17, 1925, Morris was married to Lillian King, who was thereafter known as Lillian King Morris; that on January 9, 1925, Morris and Lillian King, having theretofore become engaged to be married, entered into an ante-nuptial agreement substantially as follows: That each

party was unmarried and contemplated marrying each other; that Lillian King owned a large amount of property, both real and personal, and was engaged in business from which she was making large profits and was liable to make large profits in the future and to accumulate further property; that Morris had no property except his personal effects, and he had been fully advised as to the business and the property owned by Lillian King and as to the likelihood of her accumulating further property in the future, and that he had been fully advised and understood the rights that would accrue to him in the property of Miss King upon his marriage to her under the laws of the State of Illinois. The contract then recites as follows: "Now, therefore, the said Lillian King, in consideration of the promises of the said Thomas J. Morris to marry her and of the consummation of the said promised marriage and of his agreements herein contained, covenants and agrees that she will upon her decease pay, cause to be paid or provide that there shall be paid to him, if he is then living, twenty-five thousand dollars ($25,000) in good and lawful money of the United States within one year after her death, and he, the said Thomas J. Morris, in consideration that said contemplated marriage be consummated and of the covenant of the said Lillian King hereinbefore contained, covenants and agrees to and with the said Lillian King, her executors, administrators and heirs, that he will upon the death of the said Lillian King take and receive the said twenty-five thousand dollars ($25,000) in full of all rights of dower, homestead, survivorship, inheritance, separate maintenance, widower's award or otherwise in or to her estate and in full of all other rights, interests, claims or allowances, in law or in equity, into or upon her estate, real and personal, which he might or could have or be entitled to but for this agreement; that on payment to him of the said twenty-five thousand dollars by the said executor of the will or the administrator of the estate, or by the heirs of the said Lillian King,

within one year from the date of her death, he will release, quit-claim and discharge to her representatives or heirs all rights of dower, homestead, survivorship, inheritance, separate maintenance, widower's award or otherwise, and all other rights, claims or interests, in law or in equity, which he might or could have in or to her estate or property, or any part thereof, but for this agreement." The bill further alleged that Lillian K. Morris did not pay or cause to be paid to appellant at the time of her death the $25,000 provided in the agreement; that she did not prior to her marriage to appellant, or after the marriage, provide, during her lifetime, that there should be paid to him the $25,000 within one year after her death; that by reason of her failure to perform the covenants of the agreement it became null and void and should be so decreed; that on June 14, 1930, within one year after her death, while this case was pending in court, William M. Dewey, purporting to act on his own behalf and as administrator, and on behalf of all parties interested in the estate, tendered in open court to appellant $25,000 in legal tender, and represented to the court that the tender was made in accordance with the terms of the ante-nuptial agreement, and that appellant refused to accept the tender but claimed and alleged that the tender was not a tender in accordance with the terms of the agreement. The bill prayed that the agreement be decreed to be null and void, that appellant be decreed to be entitled to the portion of the estate which is allowed to a surviving husband under the laws of Illinois, and that a partition of the real estate in question be awarded.

Appellant contends that the ante-nuptial agreement is an executory contract; that it required affirmative action on the part of Mrs. Morris during her lifetime; that by its terms neither she nor appellant relinquished any interest in the property of the other at the time the agreement was executed or in any property which either might afterwards acquire; that the agreement contained two provisions for

payment and release of property rights in the future; that the first was a covenant to pay the money, or cause it to be paid, upon the death of Mrs. Morris; that this was not done by her during her lifetime and the contract cannot be enforced against her surviving husband by her collateral heirs; that no provision was made by her during her lifetime for the payment of the money to appellant within one year after her death, and her failure to make such provision rendered the contract unenforceable and null and void; that the contract left it entirely to her as to what means she would employ to make the payment, and that she elected to make no provision, and by so doing she repudiated the contract.

In support of the above contentions appellant has cited several cases, none of which are of much assistance in determining the questions at issue for the reason that the provisions of the contracts in these cases are either not set out in the opinions or they are so different from the provisions of the contract in question as to be of little value. The contention that the agreement contemplated affirmative action during the lifetime of Mrs. Morris is contradicted by the express language and the manifest intention of the contract. There are two provisions in the contract for the payment of the money. The first is that Mrs. Morris is to pay to appellant upon her death or cause to be paid, or that she will provide that there shall be paid to appellant, if he is then living, the money specified within one year after her death, and appellant agreed with her, her executor, administrator and heirs that he will accept the money in full of his rights in her estate. The second provision is that upon the payment of the money by the executor, administrator or heirs within one year from the date of her death, appellant will release, quit-claim and discharge to her representatives, as heirs, all of his rights in her estate. The first condition is that appellant be living at the date of the death of his wife. If he is living on that date the contract creates an

obligation in his favor to receive the money within one year after her death provided the other conditions are performed. The phrase "upon her decease," as used in the contract, means that the obligation is to become absolute upon her death, and it does not mean that she herself, upon her decease, will pay the money or cause it to be paid—acts obviously impossible of performance by her. Promises to pay at or after death are frequently used to bind the estate of the maker with the intention, merely, of creating obligations which can be enforced against the estate. (*Beatty* v. *Western College,* 177 Ill. 280; *Shaw* v. *Camp,* 160 id. 425.) The ante-nuptial contract, without any further act on the part of Mrs. Morris being necessary, imposed upon her personal representatives the obligation to pay appellant the money specified within one year after her death, and he was to receive the money in full of all of his interest in the estate. The tender made by the administrator within the year was a complete compliance with the agreement. To construe the language used as contended by appellant would violate not only the ordinary rules of grammar, but would result in the rejection as meaningless of important words and clauses in the agreement, in violation of one of the fundamental principles of the construction of contracts.

Appellant insists, that the contract is without consideration; that it is admitted by the demurrer that the marriage engagement was made and the marriage license was issued prior to the making of the ante-nuptial contract, consequently the ante-nuptial contract is not supported by the consideration of a promise of marriage or by any other valuable consideration. The contract recites that "the said Lillian King, in consideration of the promises of the said Thomas J. Morris to marry her and of the consummation of said promised marriage, and of his agreements herein contained, covenants and agrees," etc. The consideration is not based entirely upon the promise of marriage. Marriage is a sufficient consideration to support a marriage settlement.

(*Kroell* v. *Kroell,* 219 Ill. 105; *Otis* v. *Spencer,* 102 id. 622; *Rockafellow* v. *Newcomb,* 57 id. 186; *Parsons* v. *Ely,* 45 id. 232.) In Schouler's Marriage, Divorce, Separation and Domestic Relations (vol. 1, 6th ed. p. 498,) it is said: "Marriage is a sufficient consideration for an ante-nuptial contract. Marriage is of itself pronounced in the Supreme Court of this land to be not only a valuable consideration to support a marriage settlement but a consideration of the highest value. It is the consideration of marriage— not the consideration of corresponding fortune—which runs through the whole settlement or agreement and supports every part of it, thus making marriage not only a high but the highest consideration, in fact, known to the law." In *Yockey* v. *Marion,* 269 Ill. 342, on page 347, it is said: "The contract recited that it was made 'in contemplation of marriage, which, as a matter of course, was true. It would be an odd sort of thing for parties to make an ante-nuptial contract if nuptials were not in prospect, but the statement of the contract does not signify that an engagement had been made or that the execution of the contract was not a condition precedent to any engagement at all." In *In re Appleby's Estate,* 100 Minn. 408, 111 N. W. 305, the court on page 428 said: "The fact that the engagement of marriage between the parties was entered into several months before the formal written marriage settlement was made and signed does not eliminate or exclude the marriage as a consideration for that agreement. Even though the original engagement was absolute and not coupled with an express or implied understanding as to the marriage settlement, the parties by the subsequent written contract are taken, as a matter of law, to have entered into new promises, including the engagement of marriage, and the original agreement must be treated as rescinded or absorbed and embodied in the new." Here there is nothing to show whether the prior engagement was coupled with an understanding with reference to the rights of the parties regard-

ing their properties. The contract subsequently entered into is the best evidence of the agreement of the parties. The parties by the subsequent contract entered into new promises, including the engagement of marriage, and the original agreement must be treated as rescinded or absorbed and embodied in the new agreement. Any act which is of benefit to one party or a disadvantage to the other constitutes a sufficient consideration to support a contract. The promise to pay by Lillian King was a benefit to appellant, therefore there was a sufficient consideration for the contract.

Appellant contends that Lillian King did not release her interest in the estate of appellant by the ante-nuptial agreement and that the covenants on both sides were not reciprocal and identical, and therefore the contract lacked mutuality. The bill alleges that at the time the contract was made appellant had no property except his personal effects, and it is obvious that the contract of Lillian King to pay the money was a much more valuable consideration to appellant than an agreement by her to release her interest in his estate. In *Dunlop* v. *Lamb,* 182 Ill. 319, the intended husband released his interest in his intended wife's estate without any reciprocation on her part to release her interest in his estate. Upon her death the contract was specifically enforced notwithstanding the fact that the husband contended by his cross-bill that the agreement was never intended to become binding upon the husband because of the failure of the wife to execute a similar contract. In *Becker* v. *Becker,* 250 Ill. 117, *Christy* v. *Marmon,* 163 id. 225, and *Weaver* v. *Weaver,* 109 id. 225, antenuptial agreements were held valid which did not contain reciprocal provisions. The contract in question was not void because it was lacking in mutuality.

Appellant insists that specific execution of the marriage settlement cannot be compelled by the collateral heirs of Mrs. Morris. As a general rule, volunteers or persons who

are strangers to the class intended to be benefited by an agreement cannot enforce it, but the agreement will be specifically executed upon the application of any person within the scope of the consideration of the marriage or claiming under such person. (*Dunlop* v. *Lamb, supra.*) If, therefore, the heirs of Mrs. Morris, including her sisters and other collateral heirs, were intended to be benefited by the agreement they were entitled to enforce the contract. The contract in express terms includes Mrs. Morris, her executors, administrators and heirs. It provides that the money may be paid by her executors, administrators and heirs. The last paragraph provides that it shall be binding upon the executors, administrators and assigns of the parties. This court has enforced ante-nuptial contracts at the instance of collateral heirs of the decedent. (*Collins* v. *Phillips*, 259 Ill. 405; *Achilles* v. *Achilles*, 137 id. 589; *Crum* v. *Sawyer*, 132 id. 443.) There is nothing in the contract which indicates that the parties intended a restricted meaning of the word "heirs" so as to exclude the sisters or other collateral relatives of Mrs. Morris, and the contract could be enforced by collateral heirs.

Appellant insists that by the failure in her lifetime either by will or transfer to make provision for the payment of the money to appellant Mrs. Morris manifested an intention to abandon this agreement. This contention is not supported by the bill. The bill does not allege that any steps were taken to rescind or modify the contract during the lifetime of Mrs. Morris, and the contract became absolute upon her death.

We find no reversible error, and the decree is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*