(No. 22302.—

JOHN SEUSS *et al.* Defendants in Error, *vs.* OTTO
SCHUKAT, Plaintiff in Error.

*Opinion filed October 24, 1934.*

William Mannhardt, for plaintiff in error.

Loesch, Scofield, Loesch & Burke, and David L. Dickson, for defendants in error.

Mr. Justice DeYoung delivered the opinion of the court:

A decree entered by the superior court of Cook county ordered partition of a parcel of real property among the brother and four sisters of an intestate to the exclusion of her surviving husband and directed him to account for the rents and profits he collected. Otto Schukat, the surviving husband, prosecutes this writ of error to review the record.

Johanna M. Wolfrum, a widow, owned in fee simple a certain lot and the building thereon situated in the city of Chicago. On August 29, 1912, she was about to marry Otto Schukat, and in anticipation of the impending change in her status, she entered into an ante-nuptial agreement with him dated that day. This agreement recited that Johanna M. Wolfrum owned real and personal property valued at approximately $16,000; that she desired to retain after her marriage the power exercised by an unmarried person to dispose of property whenever owned or acquired by her; that Otto Schukat acquiesced in this arrangement and that he desired no right, share or interest in any of her property or estate as the result of their contemplated marriage. Following these recitals, and in consideration of the mutual promises of marriage and of one dollar paid to each by the other, the agreement provided that Johanna

M. Wolfrum would marry Otto Schukat; that he waived and released all rights which he might acquire through such marriage or as surviving husband, heir-at-law or otherwise, to the property owned or thereafter acquired by her; that, notwithstanding the marriage, she would continue to be vested with the complete ownership, enjoyment and power to dispose of her property whether presently owned or subsequently acquired, and that he nominated and appointed her his true and lawful attorney for him and in his name and stead to execute, acknowledge and deliver the instruments or conveyances necessary or expedient to carry out the intention expressed. The agreement was executed under the hands and seals of the parties and its execution was acknowledged by each of them.

The parties to the agreement were married on September 3, 1912, and lived together as husband and wife until September, 1915, when Schukat went to Germany. He remained in that country more than five years. During his absence, on July 9, 1918, his wife caused the agreement to be recorded. Later, she filed a bill for divorce, alleging extreme and repeated cruelty and desertion. Service of process upon the defendant was obtained by publication. By a decree entered on December 16, 1919, the allegations of the bill were sustained, a divorce was granted the complainant and she was allowed to resume her former name of Johanna M. Wolfrum. In the spring of 1921, Schukat returned to Chicago and on August 13 of the same year, he and his former wife married each other again. They lived together as husband and wife after their second marriage until her death which occurred on May 20, 1931. She died intestate and, besides her husband, left surviving as her only heirs-at-law, John Seuss, her brother, and Elizabeth Tyson, Katherine Busse, Fredericka Tuebbecke, and Pauline Krause, her sisters. Otto Schukat was appointed administrator of his deceased wife's estate. The agreement entered into prior to the first marriage was

discovered in the decedent's safety deposit box after her death. No other written agreement concerning the right of either to share in the estate of the other was ever executed. Schukat collected rents from the tenants and on November 30, 1932, had on hand $690.22 after deducting the necessary expenses.,

On July 2, 1931, the brother and sisters filed a bill in the superior court of Cook county against Schukat, individually and as administrator of the estate of Johanna Schukat, deceased, praying for the partition of the real estate left by her. By their bill, the complainants alleged that the property had descended to them and the defendant as tenants in common; that each of the five complainants was entitled to an undivided one-tenth, and the defendant to an undivided one-half, interest in the property and that the whole was subject to the latter's estate of homestead. Schukat, both individually and as administrator, answered the bill and, in the former capacity, filed a cross-bill against the original complainants and Edward Schols and William Schorter, tenants occupying portions of the property. By his answer and his cross-bill, he claimed not only an estate of homestead and, subject thereto, an undivided one-half of the property in fee, but also dower in the remaining half. The original bill was amended to ask an accounting of rents by Schukat and his answer was allowed to stand to the bill as amended. The cross-defendants who were the original complainants answered the cross-bill denying that Schukat was entitled to dower. Replications were filed and the cause was referred to a master in chancery. At a hearing before the master, and pursuant to notice, Schukat produced the ante-nuptial agreement dated August 29, 1912. Thereafter, Pauline Krause, one of the original complainants, filed an amended and supplemental bill in which she charged that, by virtue of this agreement, no interest in the real estate descended to Schukat and asked for its partition among her brother, her three sis-

ters and herself. Schukat, Seuss, the three sisters and the tenants were made defendants to the amended and supplemental bill. The brother and sisters, by their answer, admitted its allegations. Schukat, by his answer, averred his marriage to Johanna M. Wolfrum following the execution of the ante-nuptial agreement, their divorce and subsequent re-marriage, and her death intestate, while his wife, on May 20, 1931. He charged that, in consequence, the ante-nuptial agreement became void and had no force or effect; and he asked the relief previously sought by his cross-bill. Amended answers to the cross-bill were filed, one by Seuss, Elizabeth Tyson, Katherine Busse and Fredericka Tuebbecke and another by Pauline Krause. These answers adopted the theory of the amended and supplemental bill. Replications were filed and after a hearing the master in chancery recommended the entry of a decree dismissing the amended and supplemental bill and ordering the partition of the property in accordance with the prayer of Schukat's cross-bill. Pauline Krause interposed objections to the master's report. These objections were overruled and were ordered to stand as exceptions. The court sustained twelve of the thirteen exceptions, directed partition among the collateral heirs-at-law, allotting to each an undivided one-fifth, and ordered Schukat to pay them, after deducting his necessary disbursements, their *pro rata* shares of the rents remaining in his hands on November 30, 1932.

A question is presented which requires initial consideration. Four of the defendants in error have moved to dismiss the writ of error on the ground that the cause was reached on the call of the docket for three successive terms without service on all the defendants in error. Rule 22 of this court effective until January 1, 1934, provided in part: "When a cause pending on a writ of error is reached on the call of the docket at three successive terms and there has been no return to the writ of error or service of a writ

of *scire facias* on the defendant in error, either person-
ally or by publication, the writ of error shall be dismissed."
A *præcipe* for a writ of error was filed in the office of the
clerk of this court on December 20, 1933, and the writ
was issued on the same day, returnable to the term begin-
ning on the first Tuesday of February, 1934. There was
no return to the writ of error and the case was continued
on the call of the docket. A second writ was issued on
February 6, 1934, returnable to the April term. The plain-
tiff in error filed the record on March 14, 1934, and caused
a *scire facias* to be issued. The defendants in error other
than Edward Schols and William Schorter were served.
At the April term the case was continued to the June term.
On April 23, 1934, Edward Schols was served and there-
after William Schorter filed a disclaimer. Service of pro-
cess within the prescribed time was thus obtained on all
the defendants in error except the tenant whose disclaimer
made service upon him unnecessary. The motion to dis-
miss must therefore be denied.

To obtain a reversal of the decree, Otto Schukat, the
plaintiff in error, contends that the second marriage was
a new contract and that his rights as the surviving hus-
band of Johanna Schukat were therefore fixed by the Stat-
ute of Descent, the Dower act and the Exemption law in
force at the time of her death. The determination of this
contention is necessarily dependent upon the effect of the
divorce decree and the subsequent second marriage on the
agreement made by the plaintiff in error and the decedent
prior to and in contemplation of their first marriage.

Persons competent to contract may execute a valid ante-
nuptial agreement. (*Kuhnen* v. *Kuhnen,* 351 Ill. 591;
*Kroell* v. *Kroell,* 219 id. 105). Although the law pre-
scribes the rights of a husband and a wife in the prop-
erty of each other, persons possessing the requisite legal
capacity may, by such an agreement made in contempla-
tion of marriage exclude the operation of the law and de-

termine for themselves what rights they will have in each other's property during the marriage and after its termination by death. (*Wetsel* v. *Firebaugh,* 258 Ill. 404; *Becker* v. *Becker,* 241 id. 423; *Kroell* v. *Kroell, supra*). Antenuptial agreements are not against public policy but, on the contrary, if freely and intelligently made, are regarded as generally conducive to marital tranquility and the avoidance of disputes concerning property. (*Kuhnen* v. *Kuhnen,* 351 Ill. 591; *Dickason* v. *English,* 272 id. 368; *Becker* v. *Becker, supra; Kroell* v. *Kroell, supra; McGee* v. *McGee,* 91 Ill. 548). Marriage constitutes the consideration for the agreement and has been declared to be not only a sufficient consideration but also one of "the highest value." (1 Schouler on Marriage, Divorce, Separation and Domestic Relations, (6th ed.) p. 498; *Morris* v. *Masters,* 349 Ill. 455; *Kroell* v. *Kroell, supra*). It may be the only consideration where the prospective husband, by an ante-nuptial agreement, releases the interest which he otherwise would obtain in his future wife's property as a result of the marital status. (*Dunlop* v. *Lamb,* 182 Ill. 319). The validity of such an agreement is not impaired because the intended wife fails or omits to waive the interest she would acquire in her prospective husband's property since it is not essential that the agreement contain reciprocal provisions. (*Morris* v. *Masters,* 349 Ill. 455). Where the parties do release their respective interests in the property of each other, the agreement is supported by two valuable considerations, one, the fact of marriage, and, the second, the relinquishment of their mutual rights. (*Kroell* v. *Kroell,* 219 Ill. 105; *McGee* v. *McGee,* 91 id. 548). The principles of construction applicable to ante-nuptial agreements and to contracts generally are the same. (1 Schouler on Marriage, Divorce, Separation and Domestic Relations, (6th ed.) p. 513; *Collins* v. *Phillips,* 259 Ill. 405). In ascertaining the intention of the parties, the entire agreement, its general scope and purpose and the attendant cir-

cumstances at the time of execution should be considered. (*Collins* v. *Phillips, supra; Dunlop* v. *Lamb,* 182 Ill. 319). The property rights of the husband or wife acquired through the marital relation, however, will not be taken away by an ante-nuptial agreement unless the intention to do so is clearly apparent. (*Baughman* v. *Baughman,* 283 Ill. 55; *Dunlop* v. *Lamb, supra*). The burden of proving the agreement rests upon the party who alleges its existence. *Dean* v. *Dean,* 286 Ill. 23.

The plaintiff in error maintains that the divorce terminated the ante-nuptial agreement. The defendants in error, on the contrary, insist that no property rights were settled by the decree of divorce and that the agreement remained in effect and governed the rights of the plaintiff in error under the second, as well as the first, marriage. A marriage is a civil contract, by which a man and a woman agree to take each other for husband and wife during their joint lives, unless it is terminated by law, and to discharge towards each other the duties imposed by law upon the relation assumed. (*Meister* v. *Moore,* 96 U. S. 76; *Heymann* v. *Heymann,* 218 Ill. 636; *Cartwright* v. *McGown,* 121 id. 388). Divorce in this State is a creature of the statute and destroys the matrimonial relation which theretofore existed between the contracting parties. (*Smith* v. *Johnson,* 321 Ill. 134). It is not an act of the parties, but one of the law. Although the aid of the courts must be invoked by either the husband or the wife, the dissolution of a marriage by divorce is effected solely by a judicial decree. The act of the law in such a case creates a new and a different legal status, both for the husband and the wife. (2 Nelson on Divorce and Separation, sec. 981; *Plaster* v. *Plaster,* 47 Ill. 290; *Bernatavicius* v. *Bernatavicius,* 259 Mass. 486; *Zilley* v. *Dunwiddie,* 98 Wis. 428). It is a familiar rule that, unless preserved by statute, an absolute divorce ordinarily terminates all property rights and interest, not actually vested, of the divorced per-

sons in the property of each other which are dependent upon the marriage, such as dower, curtesy and rights of inheritance under statutes of descent. (*Maynard* v. *Hill,* 125 U. S. 190; *Barrett* v. *Failing,* 111 id. 523; *Jordan* v. *Clark,* 81 Ill. 465; *Howey* v. *Goings,* 13 id. 95; *Clarke* v. *Lott,* 11 id. 105; *Carr* v. *Carr,* 185 Iowa, 1205; *Crise* v. *Smith,* 150 Md. 322; *Harvard College* v. *Head,* 111 Mass. 209). Conversely, contractual or property rights of either a husband or a wife which exist independently of the marriage, such as transfers of property and rights under marriage settlements and separation agreements survive a divorce and are governed by the principles applicable to similar contractual or property rights. 2 Bishop on Marriage, Divorce and Separation, secs. 1654-1659; *Young* v. *Sangster,* 322 Mo. 802; *Carpenter* v. *Osborn,* 102 N. Y. 552; *Babcock* v. *Smith,* 22 Pick. (Mass.) 61; *Crise* v. *Smith, supra; Sidney* v. *Sidney,* 3 P. Wms. 269.

No evidence was adduced with respect to the intention of the contracting parties other than that expressed in the agreement. The instrument discloses the manifest intention of the parties that, after the contemplated marriage, Johanna M. Wolfrum should retain the absolute and unqualified ownership and control and the sole and complete right of disposition of her property and that Otto Schukat should surrender all right, estate or interest in her property which otherwise would accrue to him as a legal consequence of the marriage. The agreement expressly states that it was made in contemplation of the impending marriage. Obviously, successive marriages between the same parties were not contemplated when the agreement was executed.

After the divorce, the plaintiff in error and Johanna M. Wolfrum, so far as the law was concerned, were strangers to each other and their marital rights and duties were at an end. The divorce was obtained for his fault, and apart from the agreement, the decree of divorce, by operation

of law, terminated whatever right or interest he, as her former husband, had in her property. (*Emmert* v. *Hays*, 89 Ill. 11). By the agreement the plaintiff in error had waived, in consideration of the impending first marriage, all right to participate in his wife's property or estate as husband, heir-at-law or in any other character. The marriage contemplated by the agreement had been dissolved and the object of the agreement had been accomplished. During the interval between their divorce and their second marriage, the plaintiff in error and Johanna M. Wolfrum could have contracted with each other as freely as though they had never been married. They were competent to make an ante-nuptial contract in contemplation of their second marriage. They did not elect to do so, but as strangers legally, unhampered by any existing arrangement, they married again and, as a result, the rights of each in the property of the other are prescribed by law.

The defendants in error argue, however, that an ante-nuptial contract is not terminated by a divorce which does not purport to settle property rights, particularly where the heirs of the party not at fault are seeking to enforce the contract. To sustain this position, the defendants in error rely upon *Sidney* v. *Sidney*, 3 P. Wms. 269, and *Schnepfe* v. *Schnepfe*, 124 Md. 330). In both cases, a mere separation by a wife from her husband was held insufficient to defeat her enforcement of an ante-nuptial contract or settlement. They also invoke *Fisher* v. *Koontz*, 110 Iowa, 498, *Weinebrod* v. *Rohdenburg*, 343 Ill. 318, *Allen* v. *Allen*, 108 Kan. 765, and *Dennis* v. *Perkins*, 88 id. 428. Of these cases the first declared that the condonation of cruel and inhuman conduct neither rendered an ante-nuptial contract inoperative nor constituted a consideration for an oral post-nuptial agreement purporting to abrogate it, and in the remaining cases it was held that a reconciliation and resumption of the marriage following an estrangement did not, as a matter of law, void a post-nuptial or

a separation contract. In none of the cases upon which reliance is placed was the marriage dissolved. The legal consequences respecting property rights which follow an estrangement and a reconciliation differ from those which result from a divorce and a subsequent re-marriage. A separation and a reconciliation are acts of the parties and, in the absence of other considerations, obviously do not affect property rights under an ante-nuptial contract. A divorce, on the other hand, is effected by a judicial decree which completely severs the marital relation. An existing ante-nuptial agreement made in contemplation of the particular marriage is, after its dissolution, without any purpose or effect and necessarily is terminated.

It is argued by the defendants in error that the divorce was granted for the fault of the plaintiff in error and that he should not be permitted to profit by his own wrong. This argument was answered by the Supreme Judicial Court of Massachusetts in *Harvard College* v. *Head*, 111 Mass. 209. In that case Charlotte E. Head obtained a divorce from John A. Head on the ground that he treated her "with intolerable severity." Afterwards she sought to enforce an ante-nuptial agreement for the payment of an annuity to her "during the continuance of said marriage." The court, in denying her claim, said: "Nor is the wife entitled to its continuance on the ground that the husband's misconduct was the cause of the divorce. The doctrine contended for, that he who prevents the performance of a contract or condition shall not take advantage of its non-performance, does not apply to a case like this. The further continuance of the marriage was prevented by the act of the court; and if the husband was the guilty party, the court was authorized to take into consideration all the circumstances of the case, and fix the amount of alimony with reference to them." If the former wife who was the innocent party could not avail herself of the ante-nuptial agreement after she obtained the divorce, it must be ap-

parent that the collateral heirs of the decedent in the case at bar do not occupy a preferred position and that their claim to the present effectiveness of the agreement of August 29, 1912, is not maintainable.

The defendants in error assert that by recording the agreement and retaining it in a safety deposit box, Johanna Schukat manifested her intention to keep the instrument in force. It is not essential to the validity of an ante-nuptial agreement in this State that it be recorded and the process of recording would neither add to nor detract from its legal effect. The agreement was recorded on July 9, 1918, during the absence of the plaintiff in error in a foreign country. It may be assumed that the wife, by that act, showed that she then considered it binding upon her husband. The recording of the instrument, however, could not evince a controlling intent respecting a second marriage since the parties who executed the agreement were still husband and wife. Hence evidence of the wife's intention to have it govern a second marriage is necessarily wholly wanting. Even if such evidence had been adduced, it would have been unavailing since proof of the assent of the plaintiff in error would be essential to extend the operation of the agreement to such a marriage.

It follows from the foregoing that the agreement of August 29, 1912, neither applies to nor governs the property rights accruing to the plaintiff in error as a legal consequence of the second marriage. Accordingly, the decree of the superior court is reversed and the cause is remanded to that court with directions to enter a decree in conformity with the prayer of the cross-bill filed by the plaintiff in error. *Reversed and remanded, with directions.*

Mr. JUSTICE SHAW, dissenting.