994 So.2d 1195 (2008)
Svetlana A. Ozerova HERPICH, Appellant,
v.
The ESTATE OF Howard M. HERPICH, Appellee.
No. 5D07-3920.
District Court of Appeal of Florida, Fifth District.
November 14, 2008.
*1196 Lisa L. Hogreve, of Lisa L. Hogreve, LC., Cocoa, for Appellant.
Jack D. Hendren, Rockledge, for Appellee.
PER CURIAM.
Svetlana A. Ozerova Herpich ("Appellant") challenges a non-final order denying her petitions to determine exempt property, to determine homestead status of real property and for family allowance following the death of her husband ("Mr. Herpich"). In denying Appellant's requests, the trial court relied on a prenuptial agreement executed by Appellant and Mr. Herpich before a prior marriage between them. Concluding that the trial court erred in its construction of the prenuptial agreement, we reverse.
Appellant and Mr. Herpich entered into a prenuptial agreement the day they married in February 2003. It was expressly made "in anticipation of marriage." Under the terms of the prenuptial agreement, the parties waived any right to property brought into the marriage by the other party or any property separately titled to the other party. The agreement also provided that "in the event of separation and reconciliation the parties understand that matters dealing with property division shall continue to be binding unless agreed to otherwise in writing." The couple separated in March 2003 and divorced in early 2005. As part of the divorce proceedings, they executed a marital settlement agreement dividing all their marital assets.
Six months after the divorce was final, Appellant and Mr. Herpich remarried. Mr. Herpich died intestate two years later, while still married to Appellant. Appellant was appointed personal representative of Mr. Herpich's estate and filed the petitions at issue here. Mr. Herpich's two adult children from a previous marriage ("Appellees") objected to the petition for family *1197 allowance, arguing that the prenuptial agreement prevented Appellant from receiving any part of Mr. Herpich's estate. The trial court ruled in Appellees' favor and entered an order denying all of Appellant's petitions. In so ruling, the trial court relied on the provision in the prenuptial agreement discussing separation and reconciliation. It concluded that the prenuptial agreement remained valid and binding even after Appellant and Mr. Herpich divorced and remarried because the terms "separation and reconciliation" encompass "divorce and remarriage." Therefore, it found that the agreement was still effective and Appellant was barred from making a claim upon Mr. Herpich's estate.
Appellant argues that the trial court erred in ruling that the words "separation and reconciliation" encompass the terms "divorce and remarriage." Because the terms at issue here are not defined in the prenuptial agreement, Appellant resorts to the plain meaning of the words and dictionary definitions for guidance. She contends that the plain meaning of "separation and reconciliation" is distinct from "divorce and remarriage." We agree.
The same principles that control the construction of other contracts apply to the interpretation of a prenuptial agreement. Chipman v. Chipman, 975 So.2d 603, 607 (Fla. 4th DCA 2008). If the contractual language is clear and unambiguous, the contract is the best evidence of the parties' intent and the appellate court should look to the document's plain meaning when interpreting it. Ledea-Genaro v. Genaro, 963 So.2d 749, 752 (Fla. 4th DCA 2007). If, however, the language is ambiguous, or reasonably susceptible to more than one meaning, the court may resort to the rules of construction and rely on extrinsic evidence to interpret it. Weisfeld-Ladd v. Estate of Ladd, 920 So.2d 1148, 1149-50 (Fla. 3d DCA 2006); see Sandlake Residences, LLC v. Ogilvie, 951 So.2d 117, 120 (Fla. 5th DCA 2007).
As a general proposition, a prenuptial agreement does not survive divorce. This is because the agreement is terminated upon divorce. Estate of Broadhurst, 737 S.W.2d 504, 507 (Mo.Ct.App.1987) ("An existing antenuptial agreement made in contemplation of the particular marriage is, after its dissolution, without any purpose or effect and necessarily is terminated."). The agreement at issue here is not to the contrary. It states that in "the event of separation and reconciliation the parties understand that matters dealing with property division shall continue to be binding unless agreed to otherwise in writing." We find that this language is clear and unambiguous. The common meaning of "separation and reconciliation" connotes a situation where a married couple decides to live apart for a period of time and recommences to cohabitate. It does not connote a legal termination of the marital relationship. Given the plain meaning of the language in the prenuptial agreement, the trial court erred in construing "separation and reconciliation" to mean the same as "divorce and remarriage."
Appellees contend that even if the trial court erred in interpreting "separation and reconciliation," it was not error to enforce the prenuptial agreement. They explain that the presence of an anti-merger clause in the prenuptial agreement illustrates that the parties intended for the agreement to survive divorce and remarriage. We disagree.
The anti-merger clause provides that "notwithstanding the possible incorporation in any final judgment of dissolution of marriage, this Agreement will not be merged therein but shall survive the judgment and be binding on the parties at all times." It is apparent from reviewing this *1198 language that the clause merely seeks to avoid the operation of the merger doctrine but does not alter the terms of the contract itself. The contract was made "in anticipation of marriage" and contemplated only one such marriage. Once that marriage ended in divorce, the prenuptial agreement controlled the terms of the property distribution, which both parties fully performed in accordance with the agreement and judgment. Because the parties divorced and settled their affairs, the fully executed prenuptial agreement was discharged by performance and terminated. See Cannon v. Cannon, 384 Md. 537, 865 A.2d 563, 569 (2005); Seuss v. Schukat, 358 Ill. 27, 192 N.E. 668, 672-73 (1934).
Because the trial court erred in ruling that Appellant was bound by the terms of the prenuptial agreement, we reverse the denial of Appellant's petitions to determine exempt property, to determine homestead status of real property, and for family allowance and remand for further proceedings.
REVERSED and REMANDED.
ORFINGER, TORPY and COHEN, JJ., concur.