In re Estate of Oscar Spindler, Deceased.
Maria Helene Spindler, Claimant, Appellee, v. Continental Illinois National Bank and Trust Company of Chicago, as Executor of the Last Will and Testament of Oscar Spindler, Deceased, Appellant.

Gen. No. 37,377.

Opinion filed November 27, 1934.

McCulloch, McCulloch & McLaren, for appellant.

Miller, Gorham, Wales & Adams, for appellee.

Mr. Presiding Justice Gridley delivered the opinion of the court.

The present appeal is from the following judgment order of the circuit court of Cook county, entered October 25, 1933, after a trial *de novo* before the court without a jury on appeal from the probate court (*italics ours*):

"This matter coming on to be heard upon the appeal of Maria Helene Spindler from the order of the probate court of Cook county, Illinois, entered March 4, 1933, disallowing her claim in the sum of $50,000, and disallowing her claim to a preference in a part of that sum *equal to the value of her dower rights,* and the court, having heard the testimony of witnesses and examined the documents received in evidence and having heard arguments of counsel and being fully advised, finds that *the value of said dower rights* on July 12, 1931, the date of decedent's death, in the real estate owned by him, *was $7,075;* that Maria Helene Spindler is entitled to be paid out of the assets of said estate, as a *fifth* class claim, the sum of $7,075, and to the allowance of a *sixth* class claim in the sum of $42,925; that the order of the probate court disallowing her said claim is hereby reversed, and the Continental Illinois Bank & Trust Company, Executor,

etc. is hereby ordered and directed to *immediately pay* to said Maria Helene Spindler, as a fifth class claim, out of the assets of said estate, in due course of administration, the sum of $7,075, together with interest thereon at 5 per cent from October 25, 1933; and that the balance of her demand is hereby *allowed* in the sum of $42,925, with interest at 5 per cent from October 25, 1933, as a *sixth* class claim, to be paid in due course of administration.''

From the transcript of the record of the clerk of the probate court, filed in the circuit court on March 24, 1933, it appears that on September 24, 1932, Mrs. Spindler filed in the probate court the following claim against the estate:

''Maria H. Spindler, being duly sworn, deposes and says that the annexed claim against the estate of Oscar Spindler, deceased, is just and unpaid, after allowing for all just credits; that $50,000 is due her under the terms of section 3 of the ante-nuptial contract, dated October 19, 1928, between herself and decedent, copy of which is attached hereto; . . . and that (she has) no other claim against said estate except her widow's award and the devise and bequest left her under the will of testator.''

It further appears from the transcript that attached to the claim is a copy of the antenuptial contract executed on the day named in Germany and in the German language; that the attorneys for the executor entered their appearance; and that on March 4, 1933, there was a hearing on the claim before the acting probate judge, Honorable Harold J. Taylor, resulting in the probate court entering an order disallowing Mrs. Spindler's claim and giving judgment against her and in favor of the estate. An appeal by the claimant was duly perfected in the circuit court.

From the bill of exceptions, contained in the record, it appears that a hearing was had on September 28,

1933, in the circuit court before Judge Daniel P. Trude; that respective counsel for the claimant and for the executor were present; that the claimant introduced certain evidence "the same being a statement by her counsel" (Mr. Frederic O. Mason), "which was assented to" by counsel for the executor (Mr. Hugh W. McCulloch); that the claimant also introduced in evidence, as "Exhibit 1," a certified copy of the antenuptial contract, written in the German language and executed in Germany by and between Maria Helene Hirschlaff (now known as Maria Helene Spindler) and Oscar Spindler; and that the claimant also introduced in evidence, as "Exhibit 2," a translation of the contract from the German into the English language, which was stipulated to be substantially correct.

The pertinent provisions of the contract are as follows (italics ours):

"MATRIMONY AND INHERITANCE CONTRACT:

"They both stated, we intend to enter into the state of matrimony before the magistrate court, No. 2 in Hamburg, *and to exclude by this, our statement, the marital rights, and those of inheritance,* resulting from this matrimony.

"Mrs. Hirschlaff stated: It is known to me, that after getting married with my betrothed Mr. Spindler —the laws of the State of Illinois, U. S. A. grant me more financial rights than would result from the free agreement made hereby between my engaged, Mr. Spindler, and myself. *I hereby expressly disclaim those rights,* and I am aware that our financial relations are being governed solely by the following agreement between ourselves.

"Mr. Spindler takes notice of Mrs. Hirschlaff's statement, and thereupon they both state:

"1. For the time of our intended matrimony, the rights of both parties are not to be governed by the

legal consequences resulting from this matrimony, that is, in agreement with the laws of the State of Illinois, U. S. A., as well as with the provisions of the German civil code, which both provide for the validity of such an arrangement by a matrimonial contract, before the marriage is performed and considered permissible to make a special agreement by contract instead. We hereby agree on separate ownership, as it is provided for, in the German civil code (1427-1431). However, we agree that the wife does not have to meet any expenses arising during the time of our marriage.

"2. The person present referred to under No. 2 (Mrs. Hirschlaff) disclaims all rights of inheritance or succession to the property of the person referred to under No. 1 (Mr. Spindler) her future husband, should such rights be granted her under the German laws, or those of the State of Illinois, no matter whether she be a citizen of Germany, or of the State of Illinois, at the time of inheritance. As a compensation for this disclaimer, Mr. Spindler hereby expressly states *regarding a legacy,* this to be *a part of the will* already executed by him, the following:

"3. I hereby agree to give to my future wife, Maria Helene Hirschlaff, the person present referred to under No. 2, *a legacy* of $50,000 U. S. dollars (fifty thousand U. S. dollars); this amount is to be paid *immediately to* the person present referred to under No. 2 (Mrs. Hirschlaff), regardless of all other things, *out of the rest of my property.*

"The Continental & Commercial Bank in Chicago, the trustee, has in case of an inheritance to pay the amount to my widow, the person present referred to under No. 2 (Mrs. Hirschlaff), for which an authorization by my other inheritors is not required. I hereby increase the aforementioned *legacy* by U. S. $5,000 (five thousand U. S. dollars) in favor of the person

present referred to under No. 2, in the event the matrimony between myself and the person referred to under No. 2, has *lasted three years* until my death, and by a further U. S. $5,000 (five thousand U. S. dollars) for every three additional years of matrimony, up to the limit of U. S. $75,000 (seventy-five thousand U. S. dollars). The provisions regarding the payment of the *legacy* are correspondingly applicable to the added amounts.

"4. Further I herewith obligate myself, in respect of the person referred to under No. 2 (Mrs. Hirschlaff), for the purpose of buying a life insurance policy of $7,500 (seven thousand five hundred dollars) for each of her children out of the matrimony with the merchant, Erwin Hermann Hirschlaff, namely—

"A. Hans Hermann Erwin Hirschlaff, born on March 13, 1923, at Oldenfelde near Alt-Rahlstedt,

"B. Alfred Reginald Julius Hirschlaff, born on March 18, 1925, in Oldenfeldt near Alt-Rahlstedt, (total U. S., $15,000, fifteen thousand U. S. dollars).

"I hereby obligate myself to deposit such an amount with the Commerz und Privatbank Depositenkasse, A. B. Krausenstrasse No. 4 in Berlin, or any other banking institution designated by the court for the protection of wards, be it in cash money or in securities sufficiently safe for the investment of trust funds, according to the German and Prussian laws respectively, it being understood that this amount continues to be my property, and that the premiums for the two life insurances, mentioned before, are to be paid out of the interest accruing from this deposit. The insurances are to be concluded in favor of the two aforementioned sons of the person present referred to under No. 2 (Mrs. Hirschlaff), in the amount of R. M. 50,000 (fifty thousand Reichsmarks) each upon the death of the person present referred to under No. 2 (Mrs. Hirschlaff), or upon the expiration of a period

of twenty years. I also agree to it that the applications for the insurances are signed already now by the person present referred to under No. 2, under the name of Helene Spindler. The aforementioned bank in Germany is being appointed as trustee for the prompt payment of the premiums. The amount of $15,000 U. S. dollars (fifteen thousand U. S. dollars) deposited by myself as a guarantee and an eventual surplus is to be repaid to me respectively to my inheritors as soon as the insurance amount has been paid by the Insurance Company. Should at that time the aforementioned sons not be of age, then payment has to be effected to their guardian who will have to invest the funds in accordance with the rules governing the investment of Trust Funds, and who will have to pay out the respective amount to each of the two sons only after their having completed the 30th year of age. Should the beneficiaries be of age at the time the insurance company pays out the insurance amount, then the amount is to be paid to the aforementioned bank in Germany, subject to the provision that this bank effects payment to the beneficiaries only after their having completed the 30th year of age. In that case, likewise, the principal is to be invested in securities sufficiently safe for the investment of trust monies. The interest earnings are at the free disposal of each of the two sons as soon as they have become of age.

"5. In case Mrs. Hirschlaff dies before I do, the legacy as per paragraph 3 of this contract shall be considered as having lapsed.

"6. Furthermore Mr. Spindler states:

"I shall take care of all expenses of the education of the two aforementioned sons of Mrs. Hirschlaff up to the time they become of age. It is planned that Hans Hirschlaff shall come to the U. S. A. after about one year, and Reginald Hirschlaff after about three years. It is hereby expressly agreed upon that the

children are to be educated in institutions in case their presence in my house should disturb me. If the children, or one of the children, are being kept in Germany, I undertake to pay the cost for the education out of the returns on an invested capital of U. S. A. $7,500 (seven thousand five hundred U. S. dollars) for each child. This capital, consisting of German securities, will be deposited with the aforementioned bank in Germany as security. As soon as the children, or one of the children, return to the U. S. A., the amount which was deposited as guarantee for that child is released for my disposal.

"7. The person present referred to under No. 2 (Mrs. Hirschlaff), stated:

"I hereby agree to the proposed provisions of the will, which the person present referred to under No. 1 (Mr. Spindler) made to me, as per paragraphs three to six.

"8. Furthermore they both state:

"In consideration of the fact that this agreement depends on our entering the state of matrimony, and its continuance by us, we have decided to provide for the case that our marriage should be legally cancelled by divorce.

"We further determine:

"1. In the event we are legally divorced, and I, the husband, found solely guilty, the aforementioned agreement remains in force, this being expressly agreed upon hereby. This agreement does not affect the wife's claims for support if a divorce takes place, and I be alone guilty.

"2. Should a legal divorce take place for the reason that the wife is declared alone guilty, we hereby agree that all other provisions of this agreement are void and that they are expressly made with the exception of the provisions as given in paragraph 3 of this agreement. In that case, I, the wife, will have no claim for the *legacy,* as per our agreement."

In the statement of facts made on the hearing by counsel for the claimant, assented to by counsel for the executor, is the following in substance (italics ours): Shortly after the execution of the contract the parties thereto were married, and they lived together as husband and wife until the time of Mr. Spindler's death, which occurred on July 16, 1931 (i. e., less than three years after the marriage). Prior to his death but after the marriage, Mr. Spindler guaranteed the payment of an indebtedness of $148,000 of the Decorators Supply Co. to the National Life Insurance Co., and after his death the Supply Co. failed to make payment of its indebtedness to the Insurance Co., and the Insurance Co. filed a claim in the probate court of Cook county against Spindler's estate, which was allowed in the sum of $147,456.74. His said estate *"is insolvent,* and *nothing* will be available to the *legatees* under his will."  At the time of his death "the value of the real estate owned by him was $36,-000, and the computed value of Mrs Spindler's dower interest, *had she had a dower interest,* in this real estate, was $7,075."  Mr. Spindler left, as his only heirs-at-law, a son, a daughter, and the claimant, his widow.  His last will is dated July 11, 1929, and the same was duly proved and admitted to probate in the probate court of Cook county on September 29, 1931.

A photostatic copy of the will was introduced in evidence, as executor's Exhibit 1.  Paragraph 2 of the will is as follows (italics ours):

"(2): By and under an ante-nuptial agreement, dated the 19th day of October, 1928, by and between myself and my present wife, I have made certain provisions for her benefit and the benefit of her children. *I hereby ratify, confirm, and approve said ante-nuptial agreement,* and, *in accordance with* the terms and provisions thereof, *I give and bequeath* unto my wife, Helen Spindler, *the sum of Fifty Thousand (50,000) Dollars,* and in addition thereto, I *give and bequeath*

unto my said wife the sum of Five Thousand (5,000) Dollars for each three (3) year period that my said wife and I may live together as husband and wife, the said three (3) year periods to date from said date of October 19, 1928, and said sum of Five Thousand (5,000) Dollars shall be paid unto my said wife for each successive three (3) year period that may be completed at the time of my death, the aggregate thereof in no event to exceed the sum of Seventy-five Thousand (75,000) Dollars, in accordance with said Agreement. The said *bequest* unto my said wife shall be considered *a first charge upon my estate* and shall *take precedence* over all other *bequests* made hereunder.''

By paragraphs 3, 4 and 5 of the will Mr. Spindler also gave to his wife all of his personal effects, the real estate owned by him and improved with an apartment building, known as 3974-76 Lake Park avenue, Chicago, and a life estate, subject to certain limitations, in a summer home owned by him at Antioch, Lake county, Illinois.

Following the hearing, but before the judgment order in question was entered, counsel for the claimant presented four propositions of law to be passed upon by the court, who, over the objection of the executor's counsel, marked each of them ''Held.'' These propositions are as follows (italics ours):

''1. Oscar Spindler's ante-nuptial contract to give Helen Maria Spindler a $50,000 legacy *created her his creditor for that amount,* which she could enforce by filing a claim against his estate.

''2. The mere executing of a will giving her a $50,000 legacy did not complete decedent's contractual obligation to Helen Maria Spindler. It was *also necessary to pay the legacy,* and if his estate is insolvent, she is entitled to share equally with his other *creditors.*

''3. Helen Maria Spindler is *entitled to a preference* over all other creditors to such part of her $50,000

claim *as equals the value of her dower rights*, which were surrendered to him by her.

"4. The Probate Court erred in denying the claim of Helen Maria Spindler, and finding for the estate."

The first contention of counsel for the executor, as a ground for the reversal of the judgment order of the circuit court, is that "under the provisions of paragraph 3 of the ante-nuptial contract Mr. Spindler agreed to provide *in his will* for a legacy of $50,000 to Mrs. Spindler and he *did not agree* that she should be *paid* $50,000 in the event that his estate was not sufficient to pay his debts in full." After considering the contract (particularly paragraphs 2 and 3 thereof), and paragraph 2 of the will, and the stipulated facts, we agree with the contention. In paragraph 2 of the will, after reciting that by the antenuptial agreement he had made certain provisions for the benefit of his wife and of her children, it is stated in part (italics ours): "I hereby ratify, confirm, and approve said ante-nuptial agreement, and *in accordance with* the terms and provisions thereof, I give and bequeath unto my wife, Helen Spindler, *the sum of $50,000,* . . . The said *bequest* unto my said wife shall be considered a first charge upon my estate and shall *take precedence* over all other *bequests* made hereunder." In the contract Mrs. Spindler expressly disclaimed all rights in Mr. Spindler's property to which she might be entitled at the time of his death under the laws of Illinois, and in paragraph 2 follows the language: "As a compensation for this disclaimer, Mr. Spindler hereby expressly states *regarding a legacy,* this to be *a part of the will* already executed by him, the following:" Then follows in paragraph 3 the language: "I (Mr. Spindler) hereby *agree to give* to my future wife, Maria Hel'ene Hirschlaff, . . . a *legacy* of $50,000 . . . ; this amount to be paid *immediately to* . . . (her), regardless of all other things, *out of the rest of my property.*" We think

it is clear from the language of both paragraphs that Mr. Spindler's only obligation was to *include in his will* a *legacy* of $50,000 to Mrs. Spindler, which was to be paid before all other legacies or bequests. We fail to find elsewhere in the contract any provision indicating that it was the intention of the parties that as to the $50,000 Mrs. Spindler was to rank as a *creditor* of the estate, as distinguished from a legatee under the will to be executed by Mr. Spindler. And the word "legacy" is repeatedly used in other parts of the contract. In Webster's New International Dictionary (Edition of 1933) the word "Legacy" is defined to be "a gift of property by will, especially of money or other personal property; a bequest." And it is well settled law that a legacy is payable only after all debts and claims against the estate have been settled. In 40 Cyc. p. 2060, it is said: "Legatees succeed to the estate of the testator as beneficiaries and objects of his bounty, and have no rights or equities whatever as against creditors, whose debts existed in the testator's lifetime, and this applies even to a legacy based on a valuable consideration." And under the heading "Legacy based on Valuable Consideration," it is also said (pp. 1906-7): "A legacy which is given in consideration of the legatee relinquishing some subsisting right or interest against the testator or his estate, as to a creditor in satisfaction of his debt, or to testator's wife *in lieu of her dower*, . . . is entitled to priority over *general* legacies, which are mere bounties, even though the bequest greatly exceeds the value of the right relinquished." Counsel for the claimant, arguing in their brief that by the contract Mr. Spindler not only agreed to make Mrs. Spindler a legacy of $50,000 but also that it was to be paid to her immediately, lay great stress on the language in paragraph 3, viz., that the amount of the legacy "is to be paid *immediately to* . . . (her), *regardless of all other*

*things, out of the rest of my property."* We do not think that these particular words militate against our above holdings, or that the language of the contract in its entirety can be considered as a promise by him to *pay* to her $50,000, absolutely and in all events. We think that the words that the amount "is to be paid *immediately"* should be considered as the statement of the parties as to when the payment of the *legacy* was to be made; and that the words "regardless of all other things, *out of the rest of my property,"* should be considered as stating the fund, remaining after settlement of all debts and charges against Mr. Spindler's estate, out of which the *legacy* was to be paid.

Counsel for the claimant, in urging the affirmance of the judgment order and the correctness of the trial court's holdings as to the first two propositions of law submitted (above set forth), cite in their brief the cases of *Eyre v. Munro,* 26 Law Journal 757, and *Hitchcock v. Taylor,* 99 Mich. 128. Both of these cases are exhaustively discussed in the printed arguments of opposing counsel. We have carefully read these cases but do not think they are applicable to the present facts. Counsel for claimant have also cited other adjudicated cases, wherein it is held in substance that if, in an antenuptial contract, a man *promises to pay a stated amount* to his intended wife at the time of his death (and the marriage is consummated and subsequently he dies), she is entitled to file a claim, based upon the contract, as a *creditor* of his estate. The facts of those cases are, we believe, to be distinguished from the facts of the present case, wherein it appears in substance that by the judgment order, contrary to the prior ruling or judgment of the probate court, the wife has been allowed to claim as a *creditor* against the estate of her deceased husband, notwithstanding the fact that the husband, prior to the marriage and by an antenuptial contract, only

agreed to *provide in his will* for a *legacy* to her in a stated amount and thereafter made such provision in his will for that *legacy*.

And we also agree with the second contention of counsel for the Executor, viz., "That Mr. Spindler fully performed the obligation assumed by him in paragraph 3 of the ante-nuptial contract by executing his will, which contained a provision for a legacy to Mrs. Spindler of $50,000, and by leaving this will in force at the time of his death." In Vol. 1 of Page on Wills, 2nd Ed., p. 182, sec. 99, it is said: "A contract to devise or bequeath property can be performed by making a valid will at any time during the life of the promisor, and leaving it in force at his death." By the antenuptial contract the parties contemplated and agreed that Mr. Spindler was to provide in his will for such legacy to Mrs. Spindler, and, as the legacy is contained in his probated will, we are of the opinion that the obligation assumed by him in the contract was fully performed. And we are further of the opinion that the circuit court erred in holding, as it did, in proposition of law No. 2 (above set forth), that "the mere executing of a will giving her a $50,000 legacy did not complete decedent's contractual obligations to Helen Maria Spindler." Counsel for the claimant argue in substance that inasmuch as it appears that Mr. Spindler's estate is insolvent, it would be a "fraud" upon her to hold that he has fulfilled his obligation contained in the antenuptial contract by the mere executing of a will giving her such a legacy and keeping the will in force at the time of his death. A sufficient answer to the argument, in our opinion, is that it does not appear from the stipulated facts that such insolvency of the estate was occasioned by any fraudulent acts of Mr. Spindler. It was stipulated as facts that after the marriage and prior to Mr. Spindler's death he guaranteed the payment of a large in-

debtedness of the Decorator's Supply Co. to the National Life Insurance Co., that after his death the Supply Co. failed to make payment of the indebtedness, and that the Insurance Co.'s claim, based upon said guaranty and filed in the probate court, was allowed in the sum of $147,456.74. And counsel for the claimant state in their brief: "Since this guaranty *was made in good faith,* we do not question the right of the Insurance Co. to be a creditor of the estate."

It is further contended by counsel for the executor in substance that, even if it could be considered that Mrs. Spindler was entitled to have allowed as of the sixth class her claim of $50,000, as a creditor of the estate, she is not entitled to have allowed the sum of $7,075 as a preferential claim of the fifth class, said sum being "the value of her dower rights" as of the date of Mr. Spindler's death, as found by the circuit court in its judgment order in question. And counsel also contend that the court erred in holding as a proposition of law (the third as above set forth) that Mrs. Spindler "is *entitled to a preference* over all other creditors to such part of her $50,000 claim *as equals the value of her dower rights,* which were surrendered to him by her." After due consideration we are of the opinion that there is substantial merit in both contentions. By the antenuptial contract, as we construe it, Mrs. Spindler, assuming that the contemplated marriage would be consummated (as it was), gave up her prospective right of dower in Mr. Spindler's real estate, and in consideration thereof Mr. Spindler agreed to give to her in his will, *inter alia,* a legacy of $50,000. The will was subsequently executed, in which he bequeathed to her the sum of $50,000, stating that the bequest should "take precedence over all other bequests," and in which he also made a certain devise of real estate to her. After his death in July, 1931, the will, as executed and kept in force, was admitted

to probate on September 29, 1931. It was not agreed in the stipulated facts that Mrs. Spindler had any dower interest in his real estate. It was agreed that at the time of his death "the value of the real estate owned by him was $36,000, and the computed value of Mrs. Spindler's dower interest, *had she had a dower interest,* in this real estate, was $7,075." And it nowhere appears in the stipulated facts that she, within the time prescribed by the statute (sec. 11, Dower Act, Cahill's St. ch. 41, ¶ 11), filed any *renunciation* of the devise or other provisions in the will in her favor. And it is to be assumed that she elected to take under the provisions of the will. In *Davis v. Mather,* 309 Ill. 284, 288, it is said:

"The surviving husband or wife is given one of two inconsistent interests in the estate of the deceased spouse. The survivor is under the statute entitled to dower, or under the will to the devise or provision made in lieu of dower, but is not entitled to both dower and the devise under the will. An election could not be required at the common law, and courts of equity, for the better administration of justice, were called upon to compel an election on the theory of estoppel, —that is, that the acceptance of one gift estops the devisee from asserting title to the other. (*Carper v. Crowl,* 149 Ill. 465.) When the dower statute was passed it did not do away with the necessity of making an election between these inconsistent estates but provided the method by which such election should be exercised. This statute is complete in itself. If the devisee fails to pursue the course pointed out by the statute within the time limited therein, such survivor is by the express terms of the statute presumed and deemed to have elected to take under the provisions of the will. (*Cowdrey v. Hitchcock,* 103 Ill. 262.)"

Furthermore, we do not think that the circuit court was legally justified in ordering that the executor "im-

mediately pay" to Mrs. Spindler, "as a *fifth* class claim," out of the assets of the estate, etc., "the sum of $7,075," together with interest, etc. In section 70, as amended, of the Act "in regard to the Administration of Estates" (Cahill's St. 1931, ch. 3, ¶ 71, p. 62) it is stated: "Fifth. Where the deceased has *received money in trust* for any purpose, his executor or administrator shall pay out of his estate the amount thus *received* and not accounted for." The $7,075 is not money "received in trust." According to the stipulated facts it is "the computed value of Mrs. Spindler's dower interest, *had she had a dower interest,*" in Mr. Spindler's real estate. It is the amount that she would have been entitled to receive had there been no antenuptial contract and had she elected to renounce the will according to the statute. In *Shipherd v. Furness,* 153 Ill. 590, 596, it is said: "It has been decided by this court that the word *trust,* appearing in said statute, is to be taken as used, not in its broader sense, as embracing every case in which a confidence has been reposed, but in its more restrictive sense; that the statute applies to technical trusts only, and has no application to trusts which the law implies from a contract." (See, also, *Wilson v. Kirby,* 88 Ill. 566; *Svanoe v. Jurgens,* 144 Ill. 507; *Felsenthal v. Kline,* 214 Ill. 121, 123.)

Our conclusion is that the circuit court erred in entering the judgment order of October 25, 1933, and in not dismissing the claimant's appeal from the order of the probate court of March 4, 1933, which disallowed her said claims. Accordingly, said judgment order of the circuit court is reversed and the cause is remanded to that court with directions to dismiss the claimant's appeal from said order of the probate court.

*Reversed and remanded with directions.*

SCANLAN and SULLIVAN, JJ., concur.