In re Estate of Anna H. Wheeler, Deceased.
The Congregation of the Fourth Presbyterian Church of Chicago, Appellant, v. Continental Illinois National Bank and Trust Company of Chicago, Executor of the Last Will and Testament of Anna H. Wheeler, Deceased, Appellee.

Gen. No. 38,444.

Opinion filed March 2, 1936.

LOESCH, SCOFIELD, LOESCH & BURKE, of Chicago, for appellant.

McCULLOCH, McCULLOCH & McLAREN, of Chicago, for appellee.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

The Congregation of the Fourth Presbyterian Church of Chicago, Illinois, plaintiff, filed its claim in the probate court against the estate of Anna H. Wheeler, deceased, asserting that Mrs. Wheeler had in writing promised to leave to the church in her last will the sum of $25,000, which she failed to do, and asked for an allowance against the estate for this amount with interest from the date of the death of Mrs. Wheeler; the probate court refused to allow the claim and plaintiff appealed to the circuit court where after a hearing the claim was refused, and plaintiff appeals to this court. The executor of Mrs. Wheeeler's estate defended upon the ground that the promise or pledge of Mrs. Wheeler is unenforceable, and also that her promise has been satisfied.

To understand the nature of the pledge it is necessary to narrate the circumstances at some length. Virtually all the essential facts were stipulated upon the hearing in the circuit court and there is no conflict in the evidence. Plaintiff is a religious corporation engaged solely in religious and charitable activities; it is governed by a board of trustees; its activities consist of religious services, contributions to the Presbyterian Church in the United States and in support of Christian missions and other charitable enterprises; the church building has been for many years and still is located near the central business district of Chicago, at Chestnut street and Michigan avenue. Dr. John Timothy Stone became the minister

of the church in 1909 or 1910; in 1915 he presented to the board of trustees a report stating that the church faced the condition in future years of being nearer to the downtown section of the city than it was at that time, and suggested that in order to do the work the church would always have to do, there should be an endowment fund; again in the fall of 1918 Dr. Stone, at a meeting of certain members of the church, informed them that because of the fact that the church building was located near the business center of the city, in a district which was changing in character from a residential district, it might be expected that the current contributions to the work of the church would tend to decline in future years, and therefore it was necessary for the church to establish a permanent endowment fund, and Dr. Stone proposed the creation of such a fund.

Pursuant to this suggestion, on December 30, 1918, the board of trustees at a meeting adopted the following resolution:

"Resolved: That there is hereby created a fund to be designated, 'The Endowment Fund of the Fourth Presbyterian Church of Chicago, Illinois,' to be made up from donations, gifts, subscriptions and bequests therefor, the principal of which fund shall be held in trust in perpetuity and invested by the Treasurer under the direction of the Trustees; the income only of said Endowment Fund shall be expended in the support and maintenance in perpetuity of the worship, religious activities, and community services of said Church, together with the upkeep of all properties belonging to said Church.

"Resolved Further: That all gifts, bequests, subscriptions and donations to The Congregation of the Fourth Presbyterian Church of Chicago, Illinois, or to the Fourth Presbyterian Church of Chicago, Illinois, for its Endowment Fund shall upon payment to

the Treasurer be added to and become a part of said Endowment Fund to be held in trust in perpetuity for the purposes above stated;

"Resolved Further: That these resolutions shall be and are hereby made a covenant and agreement on the part of the Congregation of the Fourth Presbyterian Church of Chicago, Illinois, with every person who shall make a donation, gift, subscription or bequest or promise to make a gift, donation or bequest, to the Fourth Church for such Endowment Fund, that the principal of said 'Fund' shall be held in trust in perpetuity and the income only thereof be used by the Fourth Church for the purposes in these resolutions stated."

Apparently the church then instituted a campaign to solicit pledges to the endowment fund. Mrs. Wheeler was a member of the church at that time and continued to be until her death. On February 1, 1919, she executed and delivered to the church the written pledge which is the basis of the claim filed against her estate in the probate court. This pledge is as follows:

"To The Congregation of the Fourth Presbyterian Church of Chicago, Illinois:

"I desire to have a part in making up the amount of the Endowment Fund for the Fourth Presbyterian Church, now being raised, and in consideration of the subscriptions, gifts, donations and bequests made by all other persons to such Endowment Fund, and in further consideration of the covenant on the part of the Church, duly expressed in resolutions of its Board of Trustees, that the principal of such Fund shall be held in trust in perpetuity, and the income only thereof to be expended in the support and maintenance in perpetuity of the worship, religious activities and community service of said Church, together with the upkeep of all properties belonging to said Church, I

hereby promise to bequeath to you for said Endowment Fund, by my Last Will, the sum of 25,000 Dollars; any payments to said Fund which I may make in anticipation, in my lifetime, shall be credited by you upon said legacy and be abated therefrom in the event of my death.

"(Signed) Mrs. Arthur D. Wheeler
Anna H. Wheeler.
"Dated Chicago, Feb. 1st, 1919."

Many other persons made pledges to the endowment fund; one of such pledges is by Holmes Forsyth, dated January 10, 1922, which states that he promises to bequeath to the endowment fund by his last will $25,000, "in consideration of the subscriptions, gifts, donations and bequests made by all other persons to such Endowment Fund, and in further consideration of the covenant on the part of the Church, duly expressed in resolutions of its Board of Trustees, that the principal of such Fund shall be held in trust in perpetuity, and the income only thereof to be expended in the support and maintenance in perpetuity of the worship, religious activities and community service of said Church, together with the upkeep of all properties belonging to said Church." It was stipulated that at the time Mr. Forsyth made his pledge he knew of the pledge of Mrs. Wheeler and the other pledges to the fund by reason of his position as a trustee and custodian of the pledges held for the church by him, and that he would testify that the pledge of Mrs. Wheeler and the other pledges were part of the consideration for his pledge to the endowment fund; it was also stipulated that he had paid a considerable amount on account of the principal of this pledge, and also interest as provided for in the pledge. The other pledges to the endowment fund were substantially in the form of the pledge made by Mr. Forsyth.

Mrs. Wheeler died September 19, 1930, leaving a last will and testament with two codicils. Plaintiff asserts

that the testatrix did not comply with her pledge to bequeath to the endowment fund the sum of $25,000. It will be noted that her pledge provided that any payments to the fund made during her lifetime should be credited to the legacy and abate therefrom in the event of her death. There was evidence as to numerous contributions made by her to the Fourth Presbyterian Church. Only one of these, however, was applied on account of her legacy. This contribution amounts to $500, which was applied to the endowment fund, thus reducing the amount promised by the legacy to $24,500.

Defendant says that the pledge is not enforceable as it is the law in Illinois that such pledges are not enforceable unless money has been expended or liability incurred by the donee in reliance on the pledge; that neither the church nor Mrs. Wheeler manifested an intention to contract and that the promises by the church do not constitute a consideration that is effective to make the pledge signed by Mrs. Wheeler an enforceable contract. To this plaintiff replies that the pledge is a contract, valid and enforceable.

There is a long list of cases decided in this State involving subscriptions or promises to pay to charities, but in none of these cases appears any promise by the donee or charity to do anything. In many of these cases the subscription was enforced. In *Robertson v. March,* 4 Ill. 198, the defendant subscribed to build a church, but there was no promise or undertaking by the donee to build a church. However, the church was subsequently built and the subscription was enforced, on the ground that the donee, on the strength of the promise, had advanced money. In *Johnston v. Ewing Female University,* 35 Ill. 518, there was a subscription to be paid when a certain building should be erected, but there was no promise to construct the building, although subsequently erected. Many other cases might be cited involving similar facts. There is also a list of cases where the enforce-

ment of the pledge has been denied. Such cases are *Pratt v. Trustees of the Baptist Society*, 93 Ill. 475, involving a subscription to enable a church to buy a bell, but there was no undertaking or promise on the part of the church to buy the bell, and the subscriber died before anything was done. *Beach v. First Methodist Episcopal Church*, 96 Ill. 177, involved a subscription to build a church, but no promise was made by the donee to build, nor anything done until after the subscriber became insane. In these cases and many others which might be cited there was no promise by the donee to do the thing for which the subscription was made. None of these cases involves facts like those now before us, although the rule followed in the *Robertson* and *Johnston* cases (above) is applicable here.

In the instant case there were mutual promises, both on behalf of the church as well as on behalf of Mrs. Wheeler, the pledgor. The church agreed that the endowment fund should be made up from gifts and bequests, the principal to be held in trust in perpetuity and invested by the treasurer under the direction of the trustees; that the income, only, from the fund should be expended in the support and maintenance in perpetuity of the worship, religious activities and community services of the church, and that all donations to the endowment fund should become a part of the fund to be held in trust in perpetuity for the purposes stated, and these agreements were "made a covenant and agreement on the part of the Congregation of the Fourth Presbyterian Church of Chicago, Illinois, with every person who shall make a donation, gift, subscription or bequest or promise to make a gift . . . that the principal of said 'Fund' shall be held in trust in perpetuity and the income only thereof be used by the Fourth Church for the purposes in these resolutions stated." The pledge made by Mrs.

Wheeler stated that in consideration of the subscriptions, gifts, donations and bequests made by all other persons to the endowment fund, and "in further consideration of the covenant on the part of the church . . . that the principal of such fund shall be held in trust in perpetuity and the income only thereof" to be expended in "maintenance in perpetuity" of the religious activities of the church, she promised to bequeath to the church for the endowment fund the amount stated in her pledge. The resolution by the board of trustees, with reference to the endowment fund, may be considered as an offer to any subscribers thereto to hold all subscriptions upon the terms expressed in the resolution, which were explicitly stated to constitute a covenant and agreement with the person subscribing. It was an offer to anyone subscribing that his or her subscription would be held upon the terms stated. It follows, therefore, that when Mrs. Wheeler executed and delivered her pledge which specifically stated that it was in consideration of this covenant theretofore made, the contract was completed. The church had promised to do certain things provided anyone accepted said promise by contributing. Mrs. Wheeler accepted the offer and promise of the church and the church went ahead with its work, thus completing the contract.

Defendant says that this resolution was in fact only a declaration of trust. We cannot agree with this for the reason that the resolution is an agreement not with reference to any money then in the fund but with reference to funds which thereafter would create an endowment fund. Moreover, there was no trust *res* to be the subject matter of a declaration of trust at the time of the adoption of the resolutions. There was no endowment fund at that time, nor were there any promises to subscribe to the fund then in existence.

There was therefore no subject matter on which the resolution could act as a declaration of trust.

It is apparent that both the church and Mrs. Wheeler had an intention to enter into a binding contract. It was not such an agreement as was considered in *Beatty v. Western College,* 177 Ill. 280, where it was said there was no bargain between the parties, although in that case the gift was supported on the ground of estoppel. Counsel for plaintiff pertinently observe that the covenant of the trustees and the pledge of Mrs. Wheeler were drawn in the light of the previous decisions of the Illinois courts denying enforcement of such pledges; that the resolution and pledge express the intention of the parties to make a binding contract in which each promise would be in consideration of and dependent on the other promise, and it is aptly suggested that if this has not been done it is impossible to make a charitable subscription a binding contract, which would put charitable organizations in a special disfavored class, contrary to the often repeated assertion of the courts that subscriptions to charities are favored. We should not readily declare such a contract to be unenforceable, with the serious consequences which would follow in invalidating such pledges upon which charitable organizations must rely. It is important in this connection to note that should the board of trustees fail in their obligations to hold and administer the endowment fund as they have agreed to do, the performance of this obligation may be compelled by the heirs of Mrs. Wheeler. (*Green v. Old People's Home of Chicago,* 269 Ill. 134; *Allegheny College v. National Chautauqua County Bank of Jamestown,* 246 N. Y. 369.)

The defendant challenges the sufficiency of the consideration for the pledge given by Mrs. Wheeler. In this connection it is desirable to state the plan or set-up of the church organization with reference to its

finances. Two separate funds are administered by the church: one is the General Fund, for the maintenance of the church, administered by the board of trustees; the second is called the Session Fund, from which provision is made solely for benevolent and charitable purposes as distinguished from the maintenance of religious services; the Session Fund is administered by a separate board, called the Session; the incomes of the two funds are separately derived and separate audits are made at the end of each fiscal year, and separate budgets are also made; the income from the endowment fund goes solely to the General Fund.

Defendant's argument seems to be that the promises of the church were for its own benefit; that it promised to act as trustee solely for itself, and therefore a promise to accept a benefit for itself cannot be a sufficient consideration for Mrs. Wheeler's promise to confer that benefit, citing *Weger v. Robinson Nash Motor Co.*, 340 Ill. 81, *Green v. Ashland Sixty-Third State Bank*, 346 Ill. 174, and *Morris v. Masters*, 349 Ill. 455, where the general rule was stated that an act which is of benefit to one party or a disadvantage to another constitutes a sufficient consideration to support the contract. Defendant argues that the acts which the church promised to do were of no benefit to Mrs. Wheeler and of no detriment to the church.

Section 84 of the Restatement of Contracts says in effect that consideration is not insufficient because of the fact that the party giving the consideration is bound by a duty owed to the promisor or to the public if the act promised as consideration "differs in any way from what was previously due." By the offer by the church in the present case, new and substantial duties were undertaken. The church by its resolution promised that the principal of the endowment fund "shall be held in trust in perpetuity," the income only to be expended in maintenance "in per-

petuity'' of the religious activities of the church, ''together with the upkeep of all properties belonging to said church.'' The church thus promised to assume the burden of trusteeship, with the necessary duties of management, selection and purchase of investments, and proper disbursement, and also assumed the obligation to use the income of the fund only for certain specified purposes, narrower than the purposes for which the church was organized. It should be noted that the income from this fund cannot be used for charitable purposes or as contributions to missions or to the National Presbyterian Organization. The pledgor might well have considered it as benefit to the members of the congregation, to her family and for the city in which she lived, and a sense of satisfaction to herself that there should be a perpetual maintenance of the church's religious activities to which she had contributed. Where benefits are contemplated and result from the creation of a trust, such trust has been upheld. *Burton v. Burton's Trustee,* 198 Ky. 429; *Colburn v. Hedgdon,* 241 Mass. 183; *Fidelity Title & Trust Co., etc. v. Graham,* 262 Pa. 273.

Defendant says that the promises made by the church with reference to the endowment fund are promises to do acts which the church was obligated to do by statute, quoting par. 173, chap. 32, on Corporations, which provides that trustees of religious corporations shall hold the real and personal property of the corporation, subject to the direction of the congregation, church or society, provided that all gifts and bequests ''shall be appropriated and used as directed or intended by the person or persons making the same.'' This can only mean a direction to the trustees how to administer the trust fund after it has been received and accepted by the church or society. A church is not bound to accept a trusteeship.

It is a sufficient answer to the argument that the church was already obligated to previous pledgors to perform the acts stated in its resolutions, to note that the record shows that the resolutions of the board of trustees were passed December 30, 1918, and the first pledge made thereafter was that of Mrs. Wheeler, so that when this was made the offer contained in the resolutions had not been accepted by any other person. However, the offer contained in the resolution is only to such persons who shall make subscriptions, and the covenant of the board of trustees and Mrs. Wheeler's pledge constituted a contract for the benefit of third persons, as far as the church's promise is concerned.

The undertaking to carry on the work of the church in perpetuity was a sufficient consideration for the pledge. The wisdom and foresight of Dr. Stone and the trustees in establishing a permanent endowment fund is shown by the fact that although the church membership has made a substantial increase in numbers between the years 1918 and 1933, the income from current contributions during the same period showed a substantial reduction, while the income of the endowment fund over the same period showed a marked increase. While the income from the endowment fund in 1917 and 1918 furnished less than two per cent of the total income of the General Fund, by 1932 and 1933 it furnished over 30 per cent of the income. The statements of the receipts and disbursements show that the current income had so decreased by 1933 that the income from the endowment fund became a vital factor in carrying on the religious and charitable work of the church. The trustees say that, relying on the validity of the pledges to the endowment fund they have carried on the work of the church in face of declining current income.

It is not necessary to show that any specific activity of the church was carried on solely in reliance on the

endowment fund. In *Friedline v. Board of Trustees,* 23 Ill. App. 494, a pledge to an endowment fund was sustained, the court saying that since the donee, a college, was in successful operation on the faith of the endowment fund, of which the promise formed a part, and relying on such fund, the defense of want of consideration could not be maintained. Also in *In re Estate of Griswold,* 113 Neb. 256, where it was held that since the donee, also a college, carried on its functions it would be inferred that expenses were incurred in reliance upon the endowment fund. See also *Irwin v. Lombard University,* 56 Ohio St. 9, and *University of Southern California v. Bryson,* 103 Cal. App. 39, 283 Pac. 949.

Mrs. Wheeler's pledge, as were all the other pledges, was made in consideration of and reliance on the other pledges. It was stipulated that Holmes Forsyth would testify that the pledge of Holmes Forsyth was made in consideration of the pledge of Anna H. Wheeler. It has been held that pledges made specifically in consideration of other pledges where, relying thereon, expenditures have been made, constitute sufficient consideration for such pledges. *Beatty v. Western College,* 177 Ill. 280; *Snell v. Trustees M. E. Church of Clinton,* 58 Ill. 290; *Whitsitt v. Trustees Presbyterian Church,* 110 Ill. 125.

Fundamentally, defendant's argument is based upon the proposition that no enforceable pledge to leave a bequest to a philanthropic organization can be made. For the courts to sustain this position would substantially injure, if not destroy, all endowment funds, which, as is well known, are universally created in this country by such pledges. The injury to churches, schools, hospitals and similar agencies for good would be irreparable. We cannot give our assent to this.

We hold that there was a binding contract between Anna H. Wheeler and the board of trustees; that there

was a sufficient consideration by reason of the expenditure of money and carrying on the work of the church in reliance on the endowment fund and by reason of the making of the payment of pledges of others.

Defendant says that Mrs. Wheeler's pledge has been satisfied, but the evidence shows to the contrary. She was very generous in making various contributions toward the church work. Whenever she made a contribution she would designate its purpose, and the church would apply the contribution as she designated. There is a list of contributions by her to a variety of causes and benevolences which are specifically named. This list shows a contribution of $500 to the endowment fund which, as we have said, under the terms of her pledge must be applied on account of the amount of the legacy promised. It was stipulated that no provision was made by Mrs. Wheeler for the payment of her pledge except as may be contained in her will and the two codicils.

By article 7 of her will she bequeathed the sum of $75,000 to the Illinois Merchants Trust Company, its successor or successors, as trustee, to have and to hold upon certain trusts; by paragraph (a) she provided, among other things, that the net income from this trust estate should be paid to John Timothy Stone as long as he shall live; by her second codicil she canceled and annulled this paragraph (a) of article 7 of her will and substituted in lieu thereof a provision that the income from said trust fund should be paid to John Timothy Stone so long as he shall live, and upon his death one-half of the principal of the trust fund should be paid to the Presbyterian Theological Seminary of Chicago and the other half of the principal to The Congregation of The Fourth Presbyterian Church of Chicago, ''if the amount of the annual compensation that shall be being paid at the time of my death to said John Timothy Stone, by said The Congregation of

The Fourth Presbyterian Church of Chicago shall not be reduced so long as he shall live. In the event that the amount of said annual compensation paid to said John Timothy Stone shall be reduced after my death then said remaining one-half (½) of the principal or corpus of said trust estate, together with any accumulated income therefrom, shall go to The Presbyterian Hospital of the City of Chicago.''

On the date of Mrs. Wheeler's death Dr. Stone had ceased to be the pastor of the Fourth Presbyterian Church, but at that time and up to the present the church has voluntarily paid him a pension of $5,000 a year out of the General Fund into which the income from the endowment fund is paid. This legacy in the will cannot be considered as satisfaction of her pledge to the endowment fund of the church. The legacy is not payable to the church but to the Illinois Merchants Trust Company or its successor. It is not absolute but contingent on the fulfillment of certain conditions. Its payment is postponed to the death of Dr. Stone, whereas the pledge was due at the time of the death of Mrs. Wheeler. It is for a different amount than the pledge and has attached to it burdensome conditions not contained in the pledge. Whether or not the church would take anything under the will depends upon the performance of certain conditions, namely, the continuing payment of $5,000 annually to Dr. Stone. This annual payment was voluntary and in the nature of a pension, at the most pursuant to a moral obligation, but this legacy in the will changes the obligation to pay him $5,000 a year to a fixed legal requirement which, if the church fails to perform, it loses all right to the legacy.

It was stipulated that at the time of the death of Mrs. Wheeler, Dr. Stone's expectancy of life according to the American Experience Table of Mortality was 9.47 years. On this basis, in order to obtain the legacy of one-half of $75,000, or $37,500, the church

was obligated by the will to pay Dr. Stone for the remainder of his life the sum of $47,350. It scarcely needs further argument to demonstrate that the legacy in the will was not in satisfaction of the promise made by Mrs. Wheeler in her pledge.

Plaintiff says that interest should be allowed on its claim from the date of the death of Mrs. Wheeler, citing *Campbell v. Thompson,* 192 Ill. App. 415. Although the question of interest has not been discussed by respective counsel, we are inclined to agree with the holding of the court in *In re Estate of Spindler,* 277 Ill. App. 397, where a contract to give a legacy was held not to be a contract to pay the sum mentioned. We are of the opinion that Mrs. Wheeler was obligated to give the church a legacy which at the time of her death amounted to $24,500, and that this amount must be treated as a legacy subject to the rights and conditions under which legacies are paid.

For the reasons above indicated, the judgment of the circuit court is reversed and the cause is remanded to the circuit court with directions to that court to remand the claim to the probate court of Cook county with directions to allow the plaintiff its claim as a legacy of $24,500.

*Reversed and remanded.*

Matchett and O'Connor, JJ., concur.