Barbara Jean Overbey CREWS,
Plaintiff-Appellee,

v.

Robert Kenneth OVERBEY,
Defendant-Appellant.

Supreme Court of Tennessee,
at Nashville.

Jan. 24, 1983.

Gail Pigg, Nashville, for plaintiff-appellee.

David B. Herbert, Ortale, Kelley, Herbert & Crawford, Nashville, for defendant-appellant.

## OPINION

FONES, Chief Justice.

The major issue before this Court is whether a trust agreement, to be funded in

the future, created a present trust, and if not, was there any obstacle under the particular facts of this case, to the substitution of a second trust agreement, funded from its inception but in a different manner and with different beneficiary provisions.

## I.

Although divorced in February 1971, the parties will be referred to as husband and wife. They were married in October 1960, and had two sons, one born in December 1961, and the other in June 1965. The final decree of divorce approved a property settlement agreement entered into by husband and wife on June 1, 1970. The agreement consisted of two separate documents that were attached as exhibits A and B to the final decree and were titled, "Property Settlement and Custody Agreement" and "Domestic Trust Agreement."

In brief, the property settlement agreement gave custody of the children to wife, provided for two hundred and sixty-five dollars per month as child support plus payment of the house note, wife's car note, all medical, dental and drug expenses, clothing expenses for the children and payment of life insurance premiums on the life of husband and made wife irrevocable beneficiary of several policies and children others described therein. Some of those obligations were to cease upon wife's remarriage.

Husband and his father were engaged in a business known as Nashville Suede and Leather Cleaners and wife had actively participated in the business. After providing for the support of wife and children as described above, the property settlement agreement provided that husband would fund a separate trust agreement, made an exhibit to the property settlement agreement, as.follows: (1) husband as fifty percent owner of real property at 2701 Granny White Pike, upon payment in full of a thirty-seven thousand dollar mortgage indebtedness held by Interreal Company, or upon sale of the real estate prior to payment of the mortgage, "the parties' children will receive ten percent" ownership in the property or ten percent of the net proceeds if sold, in trust, however subject to the trust agreement; (2) to transfer to the trust annually, a sum equal to ten percent of the difference between ten thousand dollars and the total net profits of the cleaning business; and (3) upon remarriage of wife, husband would pay one hundred dollars per month to the trust, for the benefit of the children.

The domestic trust agreement dated the same day as the property settlement agreement named Morris Deaver as Trustee and recited as consideration one dollar and the mutual promises of the property settlement agreement. The trust agreement contained no reference whatever to the funding contingency involving the ten percent interest in the real property at 2701 Granny White Pike or the one hundred dollars per month payment in the event wife remarried. The only funding promise made by the grantor-husband in the trust agreement was to pay ten percent of the net profits of the cleaning business in excess of $10,000.

The two minor sons of the parties were named as beneficiaries. The trustee was directed to accumulate the income and invest it and the corpus. The only distributions were to be one-third as each beneficiary reached age twenty-five and the balance at age thirty. Wife was a contingent beneficiary. If both children should die before age thirty, she would receive one-half of the corpus and undistributed income.

It is uncontroverted that no property or money was ever transferred to the trustee of the June 1970 trust.

On May 1, 1974, husband and wife executed another "Domestic Trust Agreement." It provided that the June 1, 1970 trust agreement was terminated and cancelled; that husband deposited with the trustee, Martha Read, one hundred dollars, "herewith," and agreed to transfer to the trustee $3,900 on or before January 1, 1975, and the sum of $2,000 on or before January first of each year thereafter until the youngest son graduated from college. The 1974 trust authorized the trustee to make disbursements for the college expenses of the children, not to exceed four years of

college, and to make final distribution of any balance in the trust when the youngest son graduated from college. Wife was a contingent beneficiary of one-half of any trust assets if both sons died before the time for final distribution, as in the June 1970 trust.

On August 5, 1974, an "Agreed Amended Final Decree" was entered in the Fourth Circuit Court of Davidson County wherein it was recited that due to a change of circumstances the parties wished to modify the property settlement agreement that was approved in the 1971 final decree. The amended decree then provided that the property settlement agreement was amended by reducing the child support from $265 per month to $200 per month and by substituting the new trust agreement for the one referred to in the 1971 final decree.

On January 23, 1978, wife filed a petition seeking to set aside the amended final decree of August 1974, on the ground that the 1974 trust agreement was procured by fraud. She also sought an increase in child support payments and to have husband adjudged in contempt of Court. Wife alleged that husband induced her to enter into the 1974 trust agreement by misrepresenting the amount of his income and falsely representing that his business was failing. She asked that the 1974 trust be declared void *ab initio* because of husband's false and fraudulent representations; that the 1971 trust be declared valid and that husband be required to fund it according to its terms, alleging that he then owed that trust in excess of $35,000. In addition, she alleged a change of circumstances that justified increased child support and that husband had defied unspecified orders of the Court which put him in contempt.

Husband answered denying all material allegations of the petition and the issues were referred to a master whose report was, after exceptions by both sides were heard, approved by the trial judge.

The master and the trial court found that the 1970 trust was an executory contract to be performed in the future; and was without consideration and subject to amend-ment; and that the 1974 trust was not procured by fraud or misrepresentation.

The Court of Appeals held that the 1970 trust was a valid existing trust; that its corpus consisted of the right to enforce the promise to fund the trust upon the happening of future contingencies. That Court also held that the 1974 amendment was ineffective to modify or revoke the 1970 trust because being an irrevocable trust, it could not be modified without the consent of the beneficiaries and because the minor children were not represented in any appropriate proceeding to amend the trust. However, the Court of Appeals concluded that both the 1974 and the 1970 trust were in existence, but that husband "obviously should not have to abide by the terms of both." The intermediate court then suggested that any equitable relief from that situation should be left to a court of competent jurisdiction and that their decision was without prejudice to the rights of the parties to do so.

## II.

■ This Court's limited grant focused on the issue of whether the 1970 trust was in existence at the time the 1974 trust was created, so as to preclude the modification or revocation of the 1970 trust. There is no reported case in Tennessee on this issue. It is our opinion that the weight of authority supports the view that a declaration of trust in property to be acquired in the future does not create a present trust; that it is essential to the creation of a trust that a trust res consisting of a present interest in property be transferred to and vested in the trustee. *See, e.g., Edgar v. Fitzpatrick,* 377 S.W.2d 314 (Mo.1964); *New England Trust Co. v. Sanger,* 337 Mass. 342, 149 N.E.2d 598 (1958); *Brainard v. Commissioner,* 91 F.2d 880 (7th Cir.1937); *In Re Wheeler's Estate,* 284 Ill.App. 132, 1 N.E.2d 425 (1936); *Memphis Memorial Park v. McCann,* 133 F.Supp. 293 (D.C.Tenn.1955); Restatement (Second) of Trusts § 26 comments b and m; §§ 74–76 (1959).

A variety of views upon when a trust to be funded in the future comes into being is reflected in the lengthy annotation found in 3 A.L.R.3d 1416 (1965). A very few cases hold that a valid trust can be created in expectancies. There are other cases holding that if a present declaration of trust is made and is supported by valid consideration, the trust comes into existence *ipso facto* at such time in the future as the property is acquired by the settlor. We align ourselves with those jurisdictions that require the transfer of title to a trustee for the benefit of the trust of an identifiable res, as the event that brings a trust into existence.[1] *See, e.g. Edgar v. Fitzpatrick, supra, New England Trust Co. v. Sanger, supra, Brainard v. Commissioner, supra, In Re Wheeler's Estate, supra, Memphis Memorial Park v. McCann, supra,* Restatement (Second) of Trusts § 26 comments b and m; §§ 74–76 (1959).

None of the three contingencies mentioned in the 1970 property settlement agreement were subject to transfer or intended by the parties to be transferred to the trust until some indefinite time in the future. In fact some degree of uncertainty existed as to whether any of the contingencies would ever materialize. There was clearly uncertainty as to whether husband's business would ever make more than $10,000 net profit in any year and whether or not wife would ever remarry. Perhaps there existed more certainty that the mortgage indebtedness of $37,000 would be paid off or the property sold, but the transfer to the trust of that interest in property was expressly deferred until either the mortgage debt was paid in full or the property sold.[2] But regardless of the certainty or

uncertainty of the three contingencies it is undisputed that no res had been transferred to the 1970 trust on or before May 1, 1974, when husband and wife terminated that agreement.

The June 1970 property settlement agreement contained a provision permitting the termination of that agreement by written consent of husband and wife. Such a provision embraces the lesser power to modify. The June 1970 trust agreement was irrevocable; however it is significant to note that the three funding contingencies were spelled out in the property settlement agreement, but only one of the three was made a part of the trust agreement, the promise to pay annually ten percent of any profits of the cleaning business in excess of $10,000.

As correctly held by the Court of Appeals, all three of the trust funding contingencies were outside the scope of the legal duty of child support during minority, or of alimony *in futuro,* and retained their contractual nature. *See, e.g., Gaines v. Gaines,* 599 S.W.2d 561 (Tenn.App.1980), *Penland v. Penland,* 521 S.W.2d 222 (Tenn.1975). The inclusion of the trusts in the Court's decrees did not make them any more or less effective, nor hinder the power of termination or modification reserved to husband and wife.

It follows that on the first day of May 1974, when husband and wife terminated and cancelled, in writing, the June 1970 trust, they unquestionably had the power to terminate or modify, in any way they saw fit, all three of the promises husband had made in the June 1970 property settlement agreement to fund the trust

---

1. Under appropriate circumstances, a promise to fund a trust on the happening of future contingencies may be enforced after the maturity of the event. The cases also differ widely on the prerequisites for the application of such a rule. We are not called upon to address that issue in this case as wife relinquished any option she may have had to seek to bring the 1970 trust into existence, when she elected to terminate it on May 1, 1974. At that time she was represented by counsel and husband was not, and her contention that husband fraudulently induced her to terminate the 1970 trust has

been decided adversely to her below and is not subject to further review here, there being evidence in the record to support the concurrent finding.

2. Transfer of that interest in the Granny White property was also subject to the express provision that that obligation became null and void if it did not mature prior to the time the youngest child completed his formal education. This was a provision of the property settlement agreement, not the trust agreement.

upon the happening of the contingencies expressed therein. The 1970 trust had not come into existence because it had no res. Nothing had vested in the minor children as third party beneficiaries that was not subject to termination or modification by husband and wife. Thus, the 1974 trust was validly created and funded on May 1, 1974, and expressly terminated and cancelled in its entirety the 1970 trust, and also terminated the three funding agreements in the 1970 property settlement agreement, substituting therefor the funding provisions of the 1974 trust.

### III.

At some stage of this unfortunate and lengthy litigation, the jurisdiction of the Fourth Circuit Court of Davidson County to make any adjudication with respect to the trust issues was questioned by husband.

The Fourth Circuit Court of Davidson County is a court of limited jurisdiction. It was created by the Public Acts of 1957, chapter 44, and its grant of jurisdiction is as follows:

> Section 2. *Be it further enacted,* That the said Fourth Circuit Court of Davidson County shall be held in the City of Nashville, and shall have concurrent jurisdiction with the Circuit Court of Davidson County, the Second Circuit Court of Davidson County, and the Third Circuit Court of Davidson County on all matters involving divorces, annulments, separate support and maintenance, custody of children, support of children, care of children, adoptions, actions brought under the Uniform Reciprocal Enforcement of Support Act, certiorari and/or appeals from the Juvenile Court, and any and all other types and kinds of actions, litigation and proceedings involving domestic matters and the relationship of husband and wife, and parent and child.

The creation and modification of the 1970 and 1974 trusts were interwoven with the settlement of the marital rights of the parties and the provisions for their minor children. The rule of *Penland* and its progeny classifying as contractual matters agreements beyond the scope of the Court's power to modify, has no effect whatsoever on the jurisdiction of courts in domestic relations litigation. Such contractual agreements are almost always relevant to the continuing supervisory jurisdiction of the divorce court. The Fourth Circuit Court of Davidson County clearly does not have general jurisdiction of litigation involving fiduciaries and trust estates. However, we have no difficulty in finding that the disputes in this litigation involved domestic matters, the relationships of husband and wife and parent and child, and that the Fourth Circuit Court of Davidson County had jurisdiction to adjudicate those controversies. The fact that it was necessary to resort to a single principle of trust or contract law to resolve one of the issues did not divest that Court of jurisdiction of this case.

The results reached by the Court of Appeals on all issues before it except the status of the 1970 trust are affirmed. This case is remanded to the Fourth Circuit Court of Davidson County for the entry and enforcement of a decree consistent with this opinion. Each of the parties shall pay one-half of the costs on appeal.

COOPER, BROCK, HARBISON and DROWOTA, JJ., concur.